UNITED STATES of America, Plaintiff,

v.

LOT 9, BLOCK 1, VILLAGE EAST UNIT 4,—Second Filing, also known as Street and Number 1957 South Macon Way, Aurora, Arapahoe County, Colorado, with Buildings, Appurtenances, and Improvements, Defendant.

Omar JOUDEH and Mohamad A. Jodeh, Plaintiffs,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Plaintiff,

v.

MISCELLANEOUS JEWELRY; One 1977 Corvette, Vin 1Z37L754; One 1974 Mercedes Benz 450 SL, Vin 10704412018380, Defendants.

UNITED STATES of America, Plaintiff,

v.

ONE ARMI TANFOGLIO, MODEL TA22, REVOLVER, SERIAL NUMBER 47373, and One Winchester Rifle, Model 94, Caliber 30–30, Serial Number 3115113, Defendants.

Civ. A. Nos. 86–Z–902, 87–Z–810, 87–Z–871 and 87–Z–872.

United States District Court, D. Colorado.

Jan. 20, 1989.

Stephen C. Peters, Asst. U.S. Atty., Denver, Colo., for Government.

King M. Trimble, Trimble, Tate & Nulan, Denver, Colo., for defendants in 86–Z–902, 87–Z–871 and 87–Z–872 and for plaintiff in 87–Z–810.

## MEMORANDUM OPINION AND ORDER OF FORFEITURE

WEINSHIENK, District Judge.

These four actions *in rem* were commenced by the United States of America (Government) pursuant to the civil drug forfeiture provisions of 21 U.S.C. § 881, and consolidated for trial. Each case involves assets which were seized following the execution on April 30, 1986, of a valid search warrant at Lot 9, Block 1, Village East Unit 4, et al. (residence or 1957 South Macon Way). Three persons have interposed claims to the seized properties. Claimant Omar Joudeh is contesting the forfeiture of defendants One 1977 Black Corvette and One 1974 Red Mercedes–Benz, as well as defendant Miscellaneous Jewelry which was seized during the execution of the search warrant. Joudeh's brothers, claimants Mohamad Jodeh and Yahia Joudeh, claim innocent ownership of the defendant residence at 1957 South Macon Way. Finally, Mohamad Jodeh is also contesting the forfeiture of two guns which were found by authorities in the attic of the seized residence. All claims were tried to the Court on November 28, 29, and 30, 1988. By stipulation of the parties, all cases were consolidated for the presentation of evidence. Based on the evidence, the Court makes the following findings of fact and conclusions of law:

## I. BURDEN OF PROOF

There are two burdens of proof in civil narcotics forfeiture actions under 21 U.S.C. § 881(d), which incorporates by reference the burdens applicable in forfeiture actions generally under the Customs laws. *See, e.g., United States v. Miscellaneous Jewelry,* 667 F.Supp. 232, 237, n. 10 (D.Md.1987). The Customs laws provide in pertinent part that "where the [seized] property is claimed by any person, the burden of proof shall lie upon such claimant; ... [p]rovided [t]hat probable cause shall be first shown for the institution of such suit or action, to be judged of by the court." 19 U.S.C. § 1615.

To show probable cause, the Government must show reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion. *United States v. $250,000,* 808 F.2d 895, 897 (1st Cir.1987); *United States v. A Single Family Residence,* 803 F.2d 625, 628 (11th Cir. 1986). The Government may rely on hearsay evidence for the purpose of establishing probable cause for forfeiture. *United States v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1282 (9th Cir.1983). In addition, circumstantial evidence may serve as the sole basis for forfeiture. *Id.; United States v. $41,305.00,* 802 F.2d 1339, 1343 (11th Cir.1986).

Once the Government has met its burden to show probable cause for institution of the lawsuit, the burden then shifts to the claimants to show by a preponderance of the evidence that the seized property is not subject to forfeiture. *United States v. $250,000,* 808 F.2d 895, 897 (1st Cir.1987). The Federal Rules of Evidence apply during the second stage of the proceedings and, therefore, the claimants cannot rely on hearsay evidence to sustain the ultimate burden of proof. *United States v. One 1968 Piper Navajo Twin Engine Aircraft,* 594 F.2d 1040, 1042 (5th Cir.1979). Apply-

ing these principles to the evidence presented at trial in these cases, the Court finds that, with the exceptions set forth below, each of the seized properties will be forfeited subject to the conditions enumerated below.

## II.  DEFENDANT VEHICLES

■ The Government pursues the forfeiture of the vehicles in this case on the theory that they have been used to facilitate illegal cocaine transactions under 21 U.S.C. § 881(a)(4). In *United States v. One 1977 Chevrolet Pick-up*, 503 F.Supp. 1027 (D.Colo.1980), Judge Alfred A. Arraj held that conveyances such as the two defendant vehicles in the present case are subject to forfeiture under § 881(a)(4) even if the illegal use is undertaken only with respect to small amounts of contraband, and without the knowledge of the recorded owner. *Id.* at 1030. The lack of any innocent owner defense in conveyance cases is well established, and distinguishes this theory of forfeiture from real property cases, in which an innocent owner defense may be successfully interposed. *See Calero–Toledo v. Pierson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

Although claimant Omar Joudeh denies that the vehicles in question were used for any illegal purpose, the Government has presented ample evidence to the contrary. Hanan Muhaisen testified that she drove with Omar Joudeh on January 7, 1986, when cocaine was transported in the 1977 Black Corvette from 1957 South Macon Way to the parking lot at Gadgets Restaurant, where it was purchased by a government informant. This drug transaction was corroborated by the testimony of the informant. The Court finds that both Muhaisen and the informant were credible witnesses.

As to the 1974 Red Mercedes–Benz, Omar Joudeh's ex-wife, Teddy Ann Joudeh, testified about numerous occasions when the Mercedes was used to transport cocaine between July and September, 1985. The Court finds that her testimony is credible.

Another witness, Larry Hehr, testified to occasions in which he observed cocaine being transported in both the Mercedes and the Corvette, during the relevant time period. This testimony also is credible.

The testimony of Omar Joudeh that the two vehicles were not used for drug trafficking is simply not credible.

## III.  DEFENDANT JEWELRY

■ Government Exhibit 15 consists of an itemized appraisal of the thirty-three pieces of jewelry which were seized on the theory that the jewelry has been used or intended for use to facilitate cocaine transactions, or, alternatively, that the jewelry represents the proceeds of illegal cocaine transactions and is subject to forfeiture under 21 U.S.C. § 881(a)(6). The statute does not require the Government to show some precise relationship between each piece of jewelry and a particular cocaine transaction. *See, e.g., United States v. $41,305.00, supra*, 802 F.2d 1339, 1343 (11th Cir.1986). To the contrary, claimant Omar Joudeh "must ... establish that it is more than likely true than not that the properties were not proceeds of drug transactions or intended to be exchanged for drugs." *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232, 240 (D.Md.1987), *citing United States v. 23,530 in U.S. Currency*, 601 F.Supp. 179 (D.Md.1985).

As to most of the jewelry, Omar Joudeh did not sustain his burden of proof. The Government presented credible evidence that Omar Joudeh was heavily involved in cocaine distribution on an ongoing basis from approximately August, 1984, until April 30, 1986. In addition, Joudeh filed no personal income tax returns for tax years 1984, 1985, or 1986. Probable cause to forfeit property on a proceeds theory can be based on independent evidence of involvement in drug transactions combined with the property owner's failure to file income tax returns. *United States v. One 1985 Plymouth Colt Vista*, 644 F.Supp. 1546, 1551 (N.D.Ill.1986).

Omar Joudeh's testimony that he was engaged in a jewelry business is not supported by the evidence. Although he liked jewelry, occasionally modified it, and sometimes traded it, the only evidence of any

jewelry business is a yellow pages ad dating from 1975 through 1976.

Teddy Ann Joudeh identified some of the jewelry at trial, testifying that certain jewelry belonged to her and that the jewelry predated the cocaine conspiracy. On the Government's motion, and with the agreement of claimant Omar Joudeh, the Court hereby finds that the items of jewelry identified by Ms. Joudeh should be forfeited subject to the stipulated condition that these specific items be remitted by the Government to Teddy Ann Joudeh and her daughter, Tiffany Joudeh.

The Court finds that the following items from Exhibit 15 should be returned to Omar Joudeh because these items were acquired prior to his known involvement in the cocaine business: Nos. 3, 6, 7, 10, 13, 22, 24, 26, and 28, as well as a decorative bird and certain religious beads which were not on the seizure list.

As to the remaining jewelry, there is probable cause to find that it should be ordered forfeited to the Government. In addition, the Court also finds, pursuant to 28 U.S.C. § 2465, that the Government had reasonable cause to seize each of the jewelry items in this case because the jewelry was found in a safe in the defendant residence where Omar Joudeh stored his cocaine. This Memorandum Opinion And Order Of Forfeiture shall serve as a certificate of reasonable cause for seizure of the jewelry.

### IV. DEFENDANT RESIDENCE

Title 21 U.S.C. § 881(a)(7) provides for the forfeiture of real property which has been used or which has otherwise been intended for use to facilitate illegal drug transactions. This forfeiture provision contains a statutory defense for persons who can prove by a preponderance of the evidence that they are "innocent owners" of the real property in question. Claimants Mohamad Jodeh and Yahia Joudeh are the recorded owners of defendant 1957 South Macon Way, where Omar Joudeh lived and sold cocaine at all material times. Although the claimants, and not Omar Joudeh, are the recorded owners of the proper-

ty, they have not sustained their burden of proof, and the real estate is subject to forfeiture for three reasons.

First, the Court finds that 1957 South Macon Way was the marital property of Omar Joudeh and Teddy Ann Joudeh prior to their divorce in 1985. Teddy Ann Joudeh testified credibly that Omar Joudeh had told her that he would ask for custody of their three minor children as part of the divorce decree unless she quitclaimed her interest in the residence to Joudeh's brothers, the only claimants to the real property herein. Ms. Joudeh testified that she agreed to this transfer because of her fear of losing her children. The transfer was effectuated by the Joudeh's family attorney, Jules Ornstein, who also represented Omar Joudeh as the petitioner in the divorce proceeding. It appears from Mr. Ornstein's testimony that he was unaware of the pressure put on Mrs. Joudeh to transfer the residence. The evidence showed that Teddy Ann Joudeh signed a separation agreement in the divorce case without retaining counsel. When asked why she did not consult counsel, she answered that, if she did, she would end up with nothing.

The Court finds and concludes, therefore, that the transfer of the property to claimants Yahia Joudeh and Mohamad Jodeh was a fraudulent transfer, designed to keep marital property out of a divorce case. The property was transferred just prior to the filing of divorce papers and is not listed on any financial affidavit or pleadings in the divorce case. According to the evidence, Teddy Joudeh was to receive, in the divorce settlement, certain property in Parker, Colorado, which already belonged to her before the divorce action was ever filed. Certain other property of Omar Joudeh was not disclosed in the separation agreement, which casts further doubt over the validity of the divorce settlement.

The Court is convinced that the transfer of the defendant residence should not be given effect because it was a transfer for the purpose of keeping that property out of the divorce proceeding. *See Newman v. Newman*, 653 P.2d 728 (Colo.1982).

Second, claimants Yahia Joudeh and Mohamad Jodeh also failed to show bona fide ownership of the residence under the forfeiture laws, which recognize that narcotic traffickers such as Omar Joudeh often place their property in other person's names. In *United States v. A Parcel of Property*, 650 F.Supp. 1534 (E.D.La.1987), the court considered this aspect of the drug forfeiture statute and noted that:

> An ownership interest in property may be evidenced in a number of ways including actual possession, control, title and financial stake. *United States v. One 1945 Douglas C54 (DC-4) Aircraft*, 647 F.2d 864 (8th Cir.1981). However, documents of title are not the *sine qua non* of ownership. *United States v. DKG Appaloosas, Inc.*, 630 F.Supp. 1540, 1568 (E.D.Tex.1986). Possession of bare legal title to the seized property by one who does not control and exercise dominion over the property, or have a financial stake in the property may be insufficient to establish ownership. *United States v. One 1978 Piper Navajo PA-31 Aircraft*, 748 F.2d 316, 319 (5th Cir.1984).

*Id.* at p. 1541. In the present case, the evidence showed that at all times since the purported transfer, Omar Joudeh has continued to maintain the residence and to pay the mortgage, taxes, and other bills thereon. Omar Joudeh has exercised complete dominion and control over the property. Neither of the claimants have lived in the residence since the transfer was recorded. Joudeh also demonstrated his control over the residence by entering into a brokerage agreement to sell it during 1986. Joudeh's broker, Ralph Harmoush, testified that Omar Joudeh made all the decisions about whether to accept offers to purchase the residence. On one occasion, Harmoush approached Mohamad Jodeh about an offer on the home but was told by Jodeh to speak with Omar Joudeh instead. The Court finds and concludes, therefore, that Omar Joudeh is in fact the owner of the property notwithstanding the evidence of recorded ownership to the contrary.

Third, claimants failed to convince the Court that they were innocent and unaware of any narcotics activity even assuming they could establish bona fide ownership at the residence. The Government presented evidence that Omar Joudeh cashed checks for his cocaine sales at Mohamad Jodeh's business, Golden Gate Market. The Court finds that Exhibit 19, a check dated June 5, 1985, and made out to Golden Gate Market, was given in payment for cocaine. Larry Hehr testified that Omar Joudeh indicated his brother Mohamad was upset because some of the checks for cocaine were returned to the market for insufficient funds. Hehr also testified that on several occasions when he was to go to Miami, Florida, to purchase cocaine, in late 1985 and early 1986, Omar Joudeh went to Mohamad Jodeh's home to get the money needed from his brother.

Mohamad Jodeh testified that he did not want his children around the residence because of the parties which were being held there and because women were there, and, not Omar Joudeh's wife. That testimony underscored the notoriety of the cocaine usage and trafficking at the residence and provided additional circumstantial evidence that Mohamad Jodeh knew or should have known what was going on.

Moreover, the Government presented direct evidence through credible testimony of Teddy Ann Joudeh that she went to Mohamad Jodeh's home on South Ironton Court in Aurora, Colorado, in October, 1985, where she advised Mohamad that Omar was using drugs and dealing drugs out of the residence. During that conversation, Ms. Joudeh implored the older brother to speak with Omar in Jodeh's capacity as the family patriarch. She testified that she told him she was very concerned that Omar or someone else would overdose and be hurt. Jodeh, however, became angry and told Ms. Joudeh that he did not want to know anything about the situation. The Government presented substantial evidence that Omar Joudeh used the residence after the date of that conversation to sell cocaine to numerous individuals during late 1985 and early 1986. The weight of the evidence belies Mohamad Jodeh's testimony that he was unaware of the cocaine traf-

ficking at the home until after it was seized.

The Court also finds that claimant Yahia Joudeh has not satisfied his burden to show innocent ownership by a preponderance of the evidence. The Court specifically finds that Yahia Joudeh's testimony that he was unaware of the cocaine trafficking from the residence is not credible. The oldest brother in this tightly-knit family knew what was going on and the Court finds that it is highly unlikely that he did not share this information with his younger brother Yahia. Yahia Joudeh testified that he came to Denver for a graduation ceremony in May 1986, and that no one in the family advised him at that time that the residence he claims to own had been seized on April 30, 1986. That testimony is simply not believable. It was during May, 1986, that Joudeh also executed a power of attorney for the sale of the residence. Evidence presented by one witness indicated he observed an effort to back date certain documents in connection with that attempted sale.

For each of the foregoing reasons, the Government is entitled to a Final Judgment and Order of Forfeiture of the residence at 1957 South Macon Way.

## V. DEFENDANT GUNS

■ Claimant Mohamad Jodeh has interposed a claim against the forfeiture of two guns which were seized from 1957 South Macon Way during the execution of search warrant on April 30, 1986. Jodeh has made this claim in the nature of a Motion for Return of Property under Federal Rule of Criminal Procedure 41(e). It is noted that Jodeh has presented no documentary evidence to support his claim that he owns the weapons. He has no possessory interest in the weapons, because they were not found in a home he owned or in which he lived. Even assuming Jodeh had established bona fide ownership over the weapons his Motion for Return of Property cannot be granted because Jodeh failed to meet his burden to provide evidence of irreparable injury. *See Floyd v. United States,* 860 F.2d 999 (10th Cir.1988). Jodeh presented

no testimony that he used guns or that he intended to sell the guns. In fact, there was no evidence that Jodeh knew where the guns were at the time they were seized. Furthermore, the guns were seized from a residence where cocaine trafficking had occurred on a daily basis, even though they were located in the attic. Moreover, because no person has proved legitimate ownership of the guns, they are subject to forfeiture as contraband and should be destroyed for that additional reason.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. The United States of America is hereby granted full and legal title to the residence known as Lot 9, Block 1, Village East Unit 4, also known as 1957 South Macon Way, Aurora, Colorado, with buildings, appurtenances, and improvements, subject to the deed of trust of Key Savings & Loan or its successor in interest;

2. Claimant Omar Joudeh shall surrender the premises to the United States of America on or before December 30, 1988, and he is hereby ORDERED to pay any and all mortgage payments which come due on the property until such time as he surrenders the premises in a habitable and marketable condition and, noting the prohibitions and penalties of 18 U.S.C. § 2232, Joudeh is specifically ORDERED not to destroy or otherwise act to diminish the value of the property during this time;

3. The Government is hereby granted full and legal title to defendant One 1977 Black Corvette Vin No. 1737L75434049, and defendant One 1974 Red Mercedes–Benz 450 SL Vin No. 10704412018380, and the Government shall be permitted to put those properties into government service or share the properties with state and local law enforcement authorities in lawful accordance with 21 U.S.C. § 881(e)(1);

4. Because Omar Joudeh has heretofore been designated the substitute custodian of the 1974 Red Mercedes–Benz and has represented in open court that the vehicle has been involved in an accident, it is hereby ORDERED that Joudeh be responsible for making all necessary repairs to the vehicle, at his expense, and the vehicle shall be

surrendered, fully repaired, to the Government within ten (10) days from the date of this Order;

5. The Government shall have full and legal title to defendant Miscellaneous Jewelry except for those items identified in the Court's findings which shall be returned to Omar Joudeh, and those items which the Government has moved for permission to remit to Teddy Ann Joudeh and Tiffany Joudeh pursuant to 19 U.S.C. § 1618;

6. The United States of America shall take title of defendant guns One Armi Tangaglio, Model TA22 Revolver, Serial Number 47373, and One Winchester Rifle, Model 94, Caliber 30–30, Serial Number 3115113, for the express purpose of destroying those guns as contraband. The United States Marshal shall either take responsibility for destroying the guns or, alternatively, the guns shall be given over to the Bureau of Alcohol, Tobacco, and Firearms for purposes of destruction;

7. The bond which claimants have posted in this case is designed to insure the meritorious nature of their claims to the vehicles and to secure the Marshal's safeguarding, storage, and other costs increased by the filing of these actions and, pursuant to 19 C.F.R. § 162.47(b) and 21 C.F.R. § 1316.76(b), the bond is ORDERED forfeited and deposited into the asset forfeiture fund in lawful accordance with 21 U.S.C. § 881(e)(1);

8. Pursuant to 28 U.S.C. § 1920(2), the Court finds that the Government utilized the deposition transcripts of Omar Joudeh and Mohamad Jodeh at trial, and it is hereby ORDERED that the claimants shall be taxed and pay to the Government the costs incurred to take those depositions, or $776.55, also to be deposited in the asset forfeiture fund;

9. Pursuant to 28 U.S.C. § 1920(3) and 1920(4), the Court finds that the Government exemplified and used four sets of trial exhibits consisting of 334 pages per set, or 1336 pages at a copy cost of 15 cents per page, and it is hereby ORDERED that the claimants shall be taxed and pay to the Government the amount of these copy costs, or $200.40; also to be deposited in the asset forfeiture fund; and

10. The Clerk of the Court is DIRECTED to enter this Memorandum Opinion And Order Of Forfeiture on the docket in accordance with Federal Rules of Civil Procedure 58.