**UNITED STATES of America, Plaintiff,**

**v.**

**REAL PROPERTY LOCATED AT 2011 CALUMET, HOUSTON, TEXAS, Defendant,**

**Utotem, Inc., Claimant.**

**Civ. A. No. H–87–1678.**

United States District Court, S.D. Texas, Houston Division.

Sept. 1, 1988.

Mikal H. Frey, Asst. U.S. Atty., Houston, Tex., for plaintiff.

Carl T. Schultz, Green, Patterson & Schultz Houston, Tex., for claimant.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

Claimant, through its agents, signed a lease agreement with Mary Whitt on or about March 13, 1986. The agents were aware that Mary Whitt was not going to be running the tenant business. See, Deposition of Carol Evers, p. 43. Claimant benefited from the transaction by receiving $6,000 or $7,000 from the Whitts allegedly for another party's back rent. They also obtained a rent which was high for the neighborhood.

The lease provided, in paragraph 12, that the lessee could make no alterations of the building. Claimant, through its employees, knew of unapproved alterations, but took no action. Alterations included steel doors, barricaded windows, and an unusual mirror system above the door.

The lease with Mary Whitt provided that the property was not to be used illegally. Failure to abide by and perform any provision of the lease constituted a default. Failure to correct a default within ten days after notice constituted cause to terminate the lease. The lease provided that the property could only be used as a lounge. The sign on its front identified it as a "Senior Citizen's Hall." When claimant's employees arrived during the day to inspect the premises, they could not get in. They could hear music being played inside, but the door was locked and had no handles.

Claimant's property manager admitted that she had been informed that the defendant property was "frequently raided, that they're real persistent; they go right back in there the next night and open up." Evers Transcript, p. 44. She also stated that:

> He just said that the guy assumed that there was something going on over there that wasn't quite kosher because it said Senior Citizen's Hall; and I, myself I've been down there, and all I ever see going in there is kids ... [y]oung, young kids, yeah, early 20's, late teens, early 20's, black males.... Yeah, I've been curious, very curious. That's why—Scholtz has told me a little about it, and that's how we—that's how I found out basically there was probably something that wasn't quite kosher going on in there. We've had our suspicions, but nobody has ever complained to us about anything going on. It's just people comment. Evers Transcript, pp. 44–45.

It is uncontroverted that claimant's employees never questioned the suspicious circumstances. Despite notice of frequent raids, they never investigated and never gave notice pursuant to paragraph 18 of the lease of a duty to correct default under paragraph 12 of the lease.

■ Information obtained by the agents and employees of claimant is attributable to it. See N.K. Parrish, Inc. v. Southwest Beef, 638 F.2d 1366, 1370-1 (5th Cir.1981), cert. denied, 454 U.S. 1047, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981). Negligence of one employee for failure to inquire may also be attributable to the principal in a forfeiture case. See General Motors ·Acceptance Corporation v. United States, 249 F.2d 183 (5th Cir.1957). "Because a corporation

operates through individuals, the privity and knowledge of individuals at a certain level of responsibility must be deemed the privity and knowledge of the organization else it could always limit its liability." *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1376 (5th Cir.1983).

The innocent owner defense applies only to owners who can show that they did not know and had no reason to know of the illegal use; were uninvolved in the illegal use; and did all that could reasonably be expected to preclude or discover the illegal use. *United States v. One Boeing 707 Aircraft*, 750 F.2d 1280 (5th Cir. 1985), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2657, 86 L.Ed.2d 274. Once an owner's agent is on notice of possible illegal conduct involving the owner's leased property, his duty to do all that reasonably could be expected to prevent the illegal use of the property increases. Notice of potentially suspicious facts triggers a duty to act. *Id.* at 1289–90. As applied to this case, claimant's employees were presented with facts which required action on their part. A claim of innocent ownership when employees (1) know that the party signing the lease would not be in control of the premises; (2) are aware of unauthorized structural alterations consistent with fortification; (3) receive notice from a local realtor of frequent raids; and (4) fail to take any steps as a result of their information, is precluded by the employee's actions.

Forfeiture of land is authorized by specific legislation. 21 U.S.C. § 881(a)(7). Prior to 1984, vehicles used to facilitate the drug trade were forfeitable under 21 U.S.C. § 881(a)(4). Congress chose to add a new section concerning itself specifically with real property. Comprehensive Crime Control Act of 1984, P.Law No. 98–473, Section 5306, 98 Stat. 2050, 2051 (1984). Since the wording of the two subsections dealing with vehicles used to facilitate narcotics trafficking and land is nearly identical, cases interpreting 21 U.S.C. § 881(a)(4) are applicable to cases brought under (a)(7). The holding of *United States v. One Boeing 707 Aircraft*, is applicable to this case.

Land ownership entails duties to the community in which the land is situated. A land owner may face legal consequences for failure to correct a nuisance about which he was totally unaware. For example, in *Rogers v. Abilene*, 704 S.W.2d 145 (Tex.App.—Eastland, 1986 no writ) Ellis Harold Rogers deeded land and a building which contained a "brown bag club" to Tessie Rogers. Numerous violations involving liquor laws, gambling, assault and controlled substances occurred at the club, but there was no allegation of participation by Tessie Rogers. An injunction was entered against her closing the building, despite her lack of knowledge.

Cocaine, especially "crack" cocaine, is a viciously addictive drug. Addicts will prey on whoever or whatever is near in order to get money necessary to avoid withdrawal. A building used to sell crack in any neighborhood is a nuisance for which a landlord must be held responsible.

No allegations of participation in drug trafficking are being made against claimant's employees. Plaintiff does allege that claimant's employees knew that illegal drugs were sold at 2011 Calumet, or if the employees did not know that, they deliberately blinded themselves to the facts. A landlord cannot escape accountability to the community in which he operates by refusing to investigate suspicious facts and allegations of illegal use.

## CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment is GRANTED.