**UNITED STATES of America**

v.

**PARCEL OF REAL PROPERTY KNOWN AS 3201 CAUGHEY ROAD, MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA, and Buildings and Improvements Erected Thereon.**

**UNITED STATES of America**

v.

**PARCEL OF REAL PROPERTY KNOWN AS 3236 WEST 26TH STREET, MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA, and Buildings and Improvements Erected Thereon.**

**Nos. 88–110, 88–111 Erie.**

United States District Court,
W.D. Pennsylvania.

June 28, 1989.

James J. Ross, Asst. U.S. Atty., Erie, Pa., for U.S.

Elliott J. Segel, Erie, Pa., for Thomases.

Robert D. Pietrala, Edward J. Krug, P.C., Pittsburgh, Pa., for Colony Sav. Bank.

R.N. Spaeder, Will J. Schaaf, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for Marquette Sav. Ass'n.

## OPINION

GERALD J. WEBER, District Judge.

The United States has brought these forfeiture proceedings pursuant to the Drug Abuse Prevention Act, 21 U.S.C. § 881 et seq., seeking to have two parcels of real property forfeited on the theory that the properties were used to facilitate violations of the federal narcotics laws. *See,* 21 U.S.C. § 881(a)(7). Titles to both properties are held by Ronald Thomas and his wife Jeannine, as tenants by the entirety.

Ronald Thomas was convicted and sentenced by this Court on September 23, 1988, on one count of conspiracy to distribute cocaine; four counts of possessing cocaine with the intent to distribute; one count of using a telephone to facilitate the distribution of cocaine; and one count of failing to report gross receipts from the sale of cocaine on his 1986 federal income tax return.

Claims to both properties herein have been filed by Ronald and Jeannine Thomas. We previously rejected the claims of their two sons. The claimants do not contest that the United States has met its burden of establishing probable cause to believe that the Caughey Road property was used by Ronald Thomas to store and sell cocaine. They do, however, contest the adequacy of the government's evidence as to the West 26th Street property. Jeannine Thomas also asserts that her interest in both properties is exempted from forfeiture by the innocent owner provision of 21 U.S.C. § 881(a)(7).

On May 1, 1989, a non-jury trial was held by this Court in which a full opportunity was given to the claimants to contest the probable cause as to the 26th Street property, and to Jeannine Thomas to establish her entitlement to the innocent owner exemption. Pursuant to F.R.Civ.P. 52(a), we now present our findings of fact and conclusions of law.

I. *Probable Cause as to West 26th Street Property*

*Findings of Fact*

1. Ronald Thomas was a member of a large scale conspiracy to distribute cocaine, from the Spring of 1983 until January 16, 1987.

2. The West 26th Street property was purchased by the Thomases on October 31, 1984.

3. Ronald Thomas operated a used car sales business known as Sterling Motors from the property until the time it was seized.

4. Joseph Long was employed by Ron Thomas at the car lot during 1985 and 1986 and on occasion he received quantities of cocaine from Thomas as payment for his services.

5. Thomas regularly stored cocaine at the car lot, used and shared it with others on the premises, and supplied it to others on the premises.

6. Although Long saw cocaine supplied to others at the car lot, he never saw any money exchanged for cocaine at the lot.

7. Jeff Connelly received cocaine from Thomas at the car lot and overheard conversations there about purchases.

8. Sebastian Ambrogio once picked up $1,000 cash at the car lot from Thomas, which was to be applied to a $10,000 debt for cocaine that Thomas had bought from Patrick DiLoreto.

9. Joseph Luciano sold a car to Thomas at the car lot, and in exchange got $500 "knocked off" his cocaine debt with Thomas.

10. Ron Thomas testified that he never sold cocaine from his car lot because he was afraid of losing his license.

11. Thomas did admit, however, that he shared cocaine with others at the car lot.

*Conclusions of Law*

■ We find the evidence presented by the United States herein, sufficient to establish probable cause that the West 26th Street property was used to facilitate violations of the federal narcotics laws. We

further find Ronald Thomas' denial of "sales" from the car lot to be nothing more than a "red herring." Thomas' admission of shared usage is sufficient to establish a "distribution." In addition, Thomas did not deny Long's testimony that he was paid in cocaine, or Ambrogio's or Luciano's testimony. Any one of those transactions would suffice as facilitating a violation of the federal narcotics laws. We therefore conclude that the United States has met its burden of establishing probable cause and that that showing remains unrebutted. Accordingly, the United States is entitled to judgment in its favor as to Ronald Thomas' claims to both the Caughey Road and West 26th Street properties.

## II. *Innocent Owner Exemption—Jeannine Thomas*

Section 881(a)(7) provides an exemption from forfeiture for those whom are commonly referred to as "innocent owners:"

... no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

 In providing for this exemption, Congress clearly evidenced in its language its intent to place the burden of proof upon the claimant asserting it. The government need not prove that the claimant had actual knowledge. Rather, it is the claimant's responsibility to prove the absence of actual knowledge. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 907 (11th Cir.1985). Nevertheless, Claimant Jeannine Thomas argues that property held by tenants by the entireties can only be forfeited upon a greater showing of criminal culpability on behalf of both spouses. We cannot agree. Congress clearly and unequivocally indicated what the relevant inquiry should be. In doing so, it did not distinguish between a claim of innocent ownership by a spouse as opposed to such a claim by any other person. Similarly, we are not aware of any court, which in considering § 881(a)(7), has found that any different standard should

apply to spouses holding property as tenants by the entireties. We conclude that the relevant inquiry herein, is that which was clearly provided for by Congress—whether Jeannine Thomas can establish by a preponderance of evidence that she did not have knowledge of or consent to Ronald's use of the properties to facilitate the distribution of cocaine. *See, United States v. 30.80 Acres, Bruce Twp., Guilford City, N.C.,* 665 F.Supp. 422 (M.D. N.C.1987) and *United States v. 124 East North Ave., Lake Forest, Ill.,* 651 F.Supp. 1350 (N.D.Ill. 1987).

 In addition to the previous findings of fact, we make several further findings relating to the question of Jeannine's knowledge of her husband's activities.

### *Findings of Fact*

1. The Caughey Road property was purchased by the Thomases on November 16, 1971, and was used as the family residence.

2. For some period of time, Joe Long went to the Thomas residence weekly to get cocaine from Ron Thomas, and Jeannine was usually present at the residence.

3. Jeannine was present a "few times" when Long used cocaine at the Thomas house.

4. Jeff Connelly also picked up and used cocaine at the Thomas residence on numerous occasions, and Jeannine was frequently present in the house at these times.

5. Connelly testified that sometime in 1985 Jeannine used cocaine in his presence, but "she did not like it."

6. James Lockwood also purchased cocaine from Ron Thomas at the Thomas residence.

7. Joseph Luciano also often purchased cocaine from Ron Thomas at the Thomas residence.

8. Towards the end of his transactions, Luciano got cocaine from Thomas on an almost daily basis.

9. All of the witnesses who testified that they got cocaine at the Thomas

residence, also testified that they always got it from Ron, and never from Jeannine.

10. Sebastian Ambrogio delivered cocaine to Ron Thomas at the Thomas residence and delivered it to Jeannine when Ron was not there.

11. Ambrogio also used cocaine at the Thomas residence in Jeannine's presence.

12. When Joseph and Susan Luciano wished to purchase cocaine from Ron Thomas, Susan Luciano would call the Thomas home and leave a message with Jeannine.

13. When Susan Luciano talked with Jeannine to arrange a meeting with Ron, cocaine was not specifically mentioned.

14. The Lucianos and Jeff Connelly all testified as to a transaction occurring at the Thomas residence on or about September 6, 1986, in which Joseph Luciano made a payment of $9,000 to Ronald Thomas as partial payment of a cocaine debt.

15. The Lucianos testified that Ron Thomas gave the money to Jeannine to count.

16. Connelly could not remember for sure if Jeannine counted the money.

17. Ron Thomas testified that he counted the money and merely called his wife in from the next room to bring him some "wrappers."

18. Joseph and Susan Luciano also testified to a transaction at their house in which Ron and Jeannine Thomas were present, when a diamond ring was given to Jeannine in exchange for a reduction in the Lucianos' cocaine debt.

19. Ron Thomas testified that he did not tell his wife that the ring was in partial payment of a cocaine debt.

20. Ron Thomas did testify that Jeannine heard the details of the exchange but immediately corrected himself saying that he did not think she heard.

21. Joe Long testified that in July of 1986, while he was helping Jeannine Thomas clean out the Thomas garage, Jeannine found a stash of Ron's cocaine under some steps leading from the garage into the house.

22. Long further testified that when Jeannine found the cocaine, she thought it was "funny."

23. Joe Long also testified that sometime around the Spring of 1986, after the Thomases' son Chris overdosed on cocaine, Jeannine told Long that, "if it wasn't for Ronnie getting involved in cocaine, all this never would have happened."

24. Special Agent Kim Kelly of the Federal Bureau of Investigation testified that he had a conversation with Jeannine when a warrant was being served and she asked several questions including:

"was everyone being arrested?"

"what about DiLoreto?" (Thomas' main source of cocaine, who was convicted with him)

"what about the big man in Florida?"

25. Jeannine also related to Kelly how concerned and upset she was after her son Chris overdosed.

26. Ron Thomas agreed on cross examination herein, that cocaine had become a pervasive part of his life and that Jeannine was aware of that.

27. The abundance of evidence, herein, points to one single inescapable factual conclusion: Jeannine Thomas was well aware of her husband's involvement in the use and distribution of cocaine, and the level to which it had permeated every facet of his life.

28. Clearly, therefore, from the evidence herein, there remains no factual dispute, but that Jeannine Thomas was well aware that her husband was using the Caughey Road residence to store, distribute, and otherwise facilitate the distribution of cocaine.

29. There has been no attempt by Jeannine to rebut this obvious factual conclusion with respect to the Caughey Road residence.

30. With respect to the West 26th Street car lot; while Jeannine may not have been aware of the specifics of any individual cocaine related transactions, it is grossly disingenuous for her to argue that she therefore did not know that the property was used by her husband in his cocaine dealings, in light of the manner in which she knew it had taken over his entire life.

31. We therefore conclude that Jeannine must have known that her husband was also using the West 26th Street car lot to facilitate his distribution of cocaine.

### Conclusion of Law

In accordance with our findings of fact herein, we conclude that Jeannine has failed to meet her burden of showing that the use of the properties to facilitate the distribution of cocaine was without her knowledge or consent. Therefore, as a matter of law, Jeannine does not qualify as an innocent owner as contemplated in § 881(a)(7), and her interest in both properties is forfeitable.

### ORDER

AND NOW, this 28th day of June, 1989, it is ORDERED that the interests of claimants Ronald and Jeannine Thomas, in both parcels of real property along with buildings and improvements erected thereon, are hereby forfeited to the United States. The Clerk is DIRECTED to mark both cases CLOSED.