**UNITED STATES of America,
Plaintiff–Appellee,**

**Duvan Arboleda, individually and as
president of Gold & Gems Trading,
Claimant–Appellant,**

**v.**

**$215,300 UNITED STATES
CURRENCY, Defendant.**

**No. 87–5826.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1988.

Decided Aug. 14, 1989.

418

Marc L. Barbakoff, Miami, Fla., for claimant-appellant.

Robert A. Pallemon, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, SCHROEDER and NOONAN, Circuit Judges.

PER CURIAM:

On April 25, 1985, Alvaro Dario Hoyos entered Los Angeles International Airport carrying $215,300 strapped to his body and stuffed in his clothes. Law enforcement agents seized the money. The district court ordered forfeiture. Duvan Arboleda appeals, claiming the money Hoyos transported on his behalf was not drug-related. We affirm.

I.

Los Angeles Police Detective Michael Farrant was on duty at the airport when Hoyos walked past with a bundle of currency protruding from a pocket in his jacket. Detective Farrant identified himself and learned Hoyos was flying from Los Angeles to Miami via Atlanta. In response to further questioning, Hoyos took $15,000 from his coat pockets and said it was all the money he had. A patdown search, during which Hoyos became "visibly shaken," confirmed the presence of a large bulge around Hoyos' waist.

Detective Farrant asked Hoyos to accompany him to the Drug Enforcement Agency airport office. On the way to the office Hoyos told Detective Farrant the money belonged to a travel agency he owned. At the office, Detective Farrant asked Hoyos for the rest of the money. Hoyos produced an additional $201,000 from his jacket, his socks, and an apron-like cloth taped to his waist. Hoyos then told Detective Farrant that, except for $700 for personal expenses, the money was for the purchase of gold and gems. A search on the DEA's Narcotics and Dangerous Drugs Information System (NADDIS) computer revealed that Hoyos had been arrested nine years earlier on a charge of marijuana trafficking subsequently dismissed. Detective Farrant seized the currency pursuant to 21 U.S.C. § 881(a)(6), issued Hoyos a receipt for $215,300, and released him. The next day a police dog searching the DEA office alerted to the odor of narcotics by biting and scratching at the desk drawer in which the money was stored. A subsequent NADDIS search revealed a report that a person with claimant's name was a drug leader in Miami.

II.

■ To justify civil forfeiture under 21 U.S.C. § 881, the government must establish probable cause to believe the property was exchanged or intended to be exchanged for drugs. *United States v. Dickerson,* 873 F.2d 1181, 1184 (9th Cir.1988)

(as amended). If the government does so, the onus shifts to claimant to show by a preponderance of the evidence that the property was not involved in a violation of the narcotics laws, or to otherwise refute the government's showing of probable cause. *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir.1986).

### III.

■ To meet its burden of establishing probable cause, the government's belief that the money was involved in drug trafficking must be based on more than mere suspicion. *Id.* "To pass the point of mere suspicion and to reach probable cause, it is necessary to demonstrate by some *credible evidence* the probability that the [money] was in fact" drug-related. *Dickerson,* 873 F.2d at 1184 (emphasis in original).

■ Not all of the government's evidence was probative. A NADDIS report of a charge that was dismissed is not a credible indicia of current illegal activity.[1] We also share claimant's concern as to the general reliability of NADDIS reports.[2] Moreover, we cannot agree that flying from Los Angeles to Miami with a connection in Atlanta rather than taking a nonstop direct flight evidences an attempt to thwart surveillance. *Cf. United States v. Sokolow,* —— U.S. ——, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989) ("a trip from Honolulu to Miami, standing alone, is not a cause for any sort of suspicion").[3]

Nonetheless we conclude the reliable evidence offered by the government was sufficient in aggregate to give rise "to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs." *$5,644,540.00,* 799 F.2d at 1363. Carrying a large sum of cash is "strong evidence" of this relationship even without the presence of drugs or drug paraphernalia. *United States v. U.S. Currency, $83,310.78,* 851 F.2d 1231, 1236 (9th Cir.1988). So, too, is the positive canine alert for the presence of narcotics on the seized currency. *Dickerson,* 873 F.2d at 1184. In this instance, claimant's attack on the credibility of the canine alert fails. Uncontradicted trial testimony established that the particular police dog had an unblemished record for detecting narcotics, and the police had taken the necessary precautions to ensure a reasonable probability of proper identification and lack of tampering. *See id.; United States v. Spetz,* 721 F.2d 1457, 1464 (9th Cir.1983). Support was lent to the inference that the money was drug-related by Hoyos' attempts to avoid detection—through concealing and lying about the money—and by the fact that Hoyos' ticket was issued by a Miami travel agency that had issued tickets for some 20–30 other travelers from whom Detective Farrant had previously seized narcotics-related currency. *See $83,310.78,* 851 F.2d at 1236; *$5,644,540.00,* 799 F.2d at 1363. Finally, Hoyos' nervousness and his Miami destination, a "well-known center of illegal drug activity," were probative of probable cause in combination with the other circumstances. *See Sokolow,* 109 S.Ct. at 1586–87; *United States v. $25,000 U.S. Currency,* 845 F.2d 857, 862 & n. 6 (9th Cir.1988).

We conclude that "[t]he money, combined with other persuasive circumstantial evidence ... is sufficient here to establish probable cause." *United States v. $93,-*

---

1. *Cf. United States v. United States Currency, $83,310.78,* 851 F.2d 1231, 1236 (9th Cir.1988) (holding evidence of two prior *convictions,* in addition to a prior arrest, probative of probable cause).

2. The government itself has in the past conceded certain of these reports to be "unreliable," *see United States v. Portillo,* 469 F.2d 907, 908–09 (9th Cir.1972), and we have previously refused to find probable cause despite NADDIS information linking defendant to drug trafficking. *See United States v. Prim,* 698 F.2d 972, 973–74 & 977 (9th Cir.1983). Some showing of reliability should be offered by the government. *Cf. United States v. Spetz,* 721 F.2d 1457, 1464 (9th Cir.1983) (government must establish reliability of police dog used in canine search).

3. This is not a case like *United States v. $5,644,- 540.00,* where we held that *driving* to Atlanta evinced an intent to avoid heightened security in Miami's airport. 799 F.2d at 1363. Hoyos' failure to take the only nonstop flight available that night, without more, cannot be considered intentionally deceptive.

*685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.1984) (per curiam).

## IV.

■ We also agree with the district court that the claimant failed to carry his burden of establishing by a preponderance of the evidence that the money was not related to narcotics trafficking. To rebut the government's showing of probable cause, it was incumbent upon claimant to prove the money had an independent innocent source and had not been used illegally. *See United States v. $41,305.00 in Currency and Traveler's Checks*, 802 F.2d 1339, 1343 n. 6 (11th Cir.1986).

The government's evidence suggesting drug trafficking was strong. Claimant offered his own testimony, in rebuttal. The court's ruling that claimant failed to carry his burden of proof necessarily rested upon a rejection of that testimony. Questions of credibility are for the trial court, *see United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1108–09 (9th Cir. 1976) (per curiam); Fed.R.Civ.P. 52(a); we defer to a decision resting upon the credibility of witnesses unless it is clearly erroneous. *One Twin Engine Beech Airplane*, 533 F.2d at 1108–09. Having reviewed the evidence before the district court, we are not left with a definite and firm conviction that a mistake has been made. *United States v. Obscene Magazines, Books and Advertising Materials*, 653 F.2d 381, 383 (9th Cir.1981).

Claimant testified and was cross-examined before the court in a three-day bench trial. His testimony could be viewed as questionable on its face. He testified he had accumulated the $216,000 in his office safe from transactions involving the sale of gold, and had "loaned" it to Hoyos to purchase gold coins from a seller in Los Angeles; he took no receipt or other evidence of the loan; he was not told by Hoyos who the Los Angeles seller was or where in the Los Angeles area he was to be found; Hoyos

called him from Los Angeles on the same day he arrived to tell claimant he was unable to contact the unidentified seller, and, on claimant's instructions, returned that same day to Miami.

To support his testimony that the money was intended for an innocent purpose, claimant offered the testimony of a fellow Miami jeweler that payment in cash was a common practice in the industry and that the witness had previously carried large sums secreted on his person.[4] However, claimant conceded at trial that cash transactions were contrary to his usual practice, which was to transfer the funds by wire, *see $41,305.00*, 802 F.2d at 1345, and, when confronted by Detective Farrant, Hoyos did not offer the explanation to which claimant testified, but responded instead with the false statements and efforts to conceal outlined earlier.

■ The court also did not err in rejecting claimant's argument that even if Hoyos intended an illegitimate use, it was without claimant's knowledge or consent and therefore he was "an innocent owner" and his currency could not be subjected to forfeiture. *See United States v. Tax Lot 1500*, 861 F.2d 232, 234 (9th Cir.1988). Claimant testified he took no precautions to guard against illegal use. He argues, essentially, that believing Hoyos to be "trustworthy" constituted an honest mistake in judgment. This is merely another way of pleading negligence. Failure to exercise due care precludes reliance upon the innocent owner defense. *United States v. One 1972 Chevrolet Blazer*, 563 F.2d 1386, 1389 (9th Cir. 1977).

Accordingly, the order of forfeiture must be sustained.

AFFIRMED.

---

4. Claimant also offered another witness, Dr. Terry Hall, who testified that he had conducted a study that revealed 90% of the currency in Miami and Los Angeles carried detectable amounts of controlled substances. But Hall admitted he had tested few $50 or $100 bills, the denominations carried by Hoyos.