**UNITED STATES of America, Appellee,**

v.

**PARCEL OF REAL PROPERTY KNOWN AS 6109 GRUBB ROAD, etc.**

**Appeal of Jane DiLORETO.**

**Nos. 89–3201, 89–3202.**

United States Court of Appeals,
Third Circuit.

Dec. 15, 1989.

SUR PETITION FOR REHEARING

Before: GIBBONS, Chief Judge, and HIGGINBOTHAM, SLOVITER,

---

BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD and SEITZ,* Circuit Judges.

MANSMANN, Circuit Judge.

The petition for rehearing filed by appellee in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judges Becker, Hutchinson, Greenberg, and Nygaard would have granted rehearing.

GREENBERG, Circuit Judge, dissenting.

The accompanying order denying the government's petition for rehearing with a suggestion of rehearing in banc leaves undisturbed the panel's holding for the court that an owner of real property used in narcotics transactions may escape its civil forfeiture in an *in rem* proceeding under 21 U.S.C. § 881(a)(7), by establishing either her lack of knowledge or her lack of consent to the property's illicit use. *United States v. Parcel of Real Property Known as 6109 Grubb Road*, 886 F.2d 618, 626 (3d Cir.1989). The scope of the innocent owner defense contained in § 881(a)(7) has not been defined by this court and is a matter of enormous importance, as the effectiveness of the forfeiture statute as a weapon against drug trafficking directly depends on the ease with which owners of property used for narcotics transactions may avoid forfeiture.

The underlying facts of this case are explained in the panel's opinion and thus need only be summarized. Jane DiLoreto and Richard DiLoreto, her husband, own two parcels of real property as tenants by the entirety. Following a jury trial in the district court, Richard DiLoreto was con-

victed of various narcotics related offenses. At a subsequent forfeiture hearing in a proceeding brought by the government pursuant to § 306(a) of the Comprehensive Crime Control Act of 1984, 21 U.S.C. § 881(a)(7), Jane DiLoreto conceded that her husband probably had used the two premises to facilitate his narcotics transactions, but claimed that her interest was not forfeited because he had acted without her knowledge or consent. The district court, relying in part on hearsay evidence introduced by the government, concluded that Jane DiLoreto did not qualify as an innocent owner under § 881(a)(7) because she either knew or deliberately blinded herself to her husband's illicit use of the property. Accordingly, it entered orders forfeiting the interests of both DiLoretos in the property to the United States.

On appeal by Jane DiLoreto, the panel decided that the district court erred in considering hearsay evidence when assessing the credibility of her claimed ignorance of her husband's drug deals. Thus, a remand for further proceedings was required. But the panel went further and, after an analysis of the legislative history and purpose of § 881(a)(7), determined that, at the remand, Jane DiLoreto could prevail in her innocent owner defense "by proving by a preponderance of the evidence that the illegal use of the property occurred either without her knowledge or without her consent." 886 F.2d at 626. The government then filed the petition for rehearing limited to the panel's construction of § 881(a)(7). I vote for rehearing in banc because I am convinced that the panel's opinion is directly contrary to the language of § 881(a)(7), frustrates its purpose, flies in the face of the very legislative history upon which the panel relied, and is completely inconsistent with the *in rem* nature of a civil property forfeiture.

As with any question involving statutory construction, my "starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979); *Consumer Product Safety*

---

* Senior Judge Seitz voted only as to panel rehear-   ing.

*Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Where that language is unambiguous, it is presumed to express the legislative purpose and resort to the legislative history is not necessary. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *TVA v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978). *See also Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

In my view, the language of § 881(a)(7) is susceptible of only one interpretation. The statute provides for the forfeiture of

[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, *except that no property shall be forfeited* under this paragraph to the extent of an interest of an owner, by reason of any act or omission *established by that owner to have been committed or omitted without the knowledge or consent of that owner.*

21 U.S.C. § 881(a)(7) (emphasis supplied). To establish its prima facie case, the government need only prove that there is probable cause for believing that the premises were used or were intended to be used for drug trafficking. *See United States v. $215,300 U.S. Currency*, 882 F.2d 417, 418 (9th Cir.1989).

The government may, of course, prevail without adducing any evidence as to the owner's guilt or innocence as a forfeiture under § 881(a)(7) is an *in rem* civil proceeding and the offender is the *res* itself rather than its owner. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974); *The Palmyra*, 25 U.S. (12 Wheat.) 1, 14–15, 6 L.Ed. 531 (1827) ("the proceeding *in rem* stands independent of, and wholly unaffected by, any criminal proceed-ing *in personam*"). *See also United States v. Tax Lot 1500*, 861 F.2d 232, 234–35 (9th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989) (holding that Eighth Amendment protection does not extend to a forfeiture under § 881(a)(7) due to the *in rem* nature of proceeding). There may, however, be some constitutional limitation on forfeitures of properties of innocent owners, as the Supreme Court has intimated that there are possible due process problems if an owner uninvolved in and unaware of the wrongful activity does all that reasonably could be expected to prevent its unlawful use, but nevertheless cannot avoid its forfeitures, *Calero–Toledo*, 416 U.S. at 688–89, 94 S.Ct. at 2094–95. But a literal construction of the statutory innocent owner defense in § 881(a)(7) fully comports with any such due process limitation on the government's power of forfeiture and the panel did not suggest that it was required to reach its result to avoid a constitutional problem.

Under the statute, an owner may escape forfeiture only by rebutting the government's evidence of probable cause, *$215,-300 U.S. Currency*, 882 F.2d at 419, or by establishing the affirmative defense that the offense was committed "without [her] knowledge or consent." *See United States v. A Parcel of Real Property*, 636 F.Supp. 142, 146 (N.D.Ill.1986). This language is perfectly clear and it means what it says. Inasmuch as the words "knowledge" and "consent" are separated by an "or" they are disjunctive and each relates back to the offense. Accordingly, unless the owner demonstrates that the offenses were committed without either her knowledge or consent she loses. It is that simple.

This understanding of § 881(a)(7) is consistent with the ordinary canons of statutory construction cited by the panel. The panel quoted *Reiter*, 442 U.S. at 339, 99 S.Ct. at 2331, for the proposition that "terms connected by a disjunctive [must] be given separate meanings unless the context dictates otherwise." 886 F.2d at 626. *See also FCC v. Pacifica Foundation*, 438 U.S. 726, 739–40, 98 S.Ct. 3026, 3035, 57 L.Ed.2d 1073 (1978) (same). *See generally* 1A N. Singer, *Sutherland on Statutes and*

*Statutory Construction,* § 21.14 (4th ed. 1980) (opining that "[w]here a failure to comply with any [statutory] requirement imposes liability, the disjunctive 'or' should be used").

Notwithstanding its stated intention to give effect to every word in the statute, the panel has construed the innocent owner defense so as to conflate the two elements, "knowledge" and "consent." The panel holds that if the owner proves lack of knowledge, then the existence or nonexistence of the owner's consent becomes irrelevant. Alternatively, if the owner has not consented to the property's illicit use, then she must prevail in her claim of innocent ownership, even if she was aware her husband was selling drugs on the marital premises and did not take action to stop it by reporting the matter to the prosecuting authorities.[1] A logical corollary of this holding is that property cannot be forfeited under § 881(a)(7) unless the owner knowingly consented or voluntarily consented to the illicit use. The statute simply will not bear the meaning the panel has imputed to it.

Knowledge and consent are, of course, separate concepts. While an owner might have knowledge of the offense and consent to it, she can consent without knowledge or have knowledge without consent. For example, a wife might implore her husband not to sell drugs but be aware that he is doing so. She would have knowledge but could be held not to have consented to his activities. *Cf. United States v. One 1985 Mercedes Benz Automobile,* 716 F.Supp. 211, 212 (E.D.N.C.1989) (rejecting innocent owner defense to forfeiture under § 881(a)(4) even though owner-driver of forfeited automobile asked passenger to discard marijuana cigarette and did not personally possess any contraband). On the other hand, a landlord might rent a property to a person known to him to be a drug dealer and, because of the substantial rent paid, be completely indifferent to the use of the property and thus not have actual knowledge of what has happened on it. Yet he could be taken to have consented to the illegal use. *See United States v. Real Property Located at 2011 Calumet, Houston, Texas,* 699 F.Supp. 108, 110 (S.D.Tex. 1988) (holding that a lessor which received a rent which was high for the neighborhood could not claim innocent owner status where lessor's agents had notice of possible drug trafficking on premises yet failed to investigate the illegal use). In the above scenarios, neither the wife nor the landlord can fairly be regarded as innocent because neither has taken any measures to ensure that the property has not been used for illegal purposes. *See also United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884, 888–89 (11th Cir.1989) (owner of yacht had duty to inquire as to prospective buyer's intended use); *United States v. 1966 Beechcraft Aircraft Model King Air A90,* 777 F.2d 947, 952 (4th Cir.1985).

It is useful to consider how § 881(a)(7) would read if the burden of proof was on the government to negate the innocence of the owner. Then the government would have to establish that the criminal act was, in the words of § 881(a)(7), committed with "the knowledge or consent of that owner." In other words, the "without" in the section would be replaced with a "with." In that case, no reasonable argument could be made that the government would have to establish both knowledge and consent of the owner to justify the forfeiture. *See Knutzen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343, 1349 (10th Cir.1987) ("the use of a disjunctive in a statute . . . indicates that alternatives were intended"). I find it inconceivable that Congress, by placing the burden on the owner to establish innocence rather than on the government to establish culpability, intended to add to the elements necessary to justify a

1. The panel opined that the factfinder could somehow view the "no knowledge" question as unresolved when evaluating the owner's no consent defense, notwithstanding the owner's failure to prove lack of knowledge of the criminal activity: "a failure to prove the first defense, *i.e.,* no knowledge, does not itself constitute proof of knowledge." 886 F.2d at 627. This statement is revealing of the extent to which the panel has misconstrued § 881(a)(7). Under the statute, both knowledge and consent are presumed and the burden is on the owner to prove her innocence.

forfeiture. To the contrary, it is clear that Congress intended to make forfeitures easier and was starting from the premise that ordinarily the drug property would be forfeited.

Although I believe that the court's analysis should go no further than the plain language of the statute, my colleagues obviously disagree and so I point out that the very legislative history cited by the panel fully supports the government's construction of § 881(a)(7). As the panel noted, the stated purpose of the Comprehensive Crime Control Act of 1984 was to:

> enhance the use of forfeiture ... as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking. Profit is the motivation for this criminal activity and it is through economic power that it is sustained and grows.
>
> . . . .
>
> Today, few in the Congress or the law enforcement community fail to recognize that the traditional sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs which, with its inevitable attendant violence, is plaguing the country. Clearly, if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made.

General Statement and Summary, Title III–Forfeiture, S. 1762, Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1837, *reprinted in* 1984 U.S.Code Cong. &

Admin.News 3182, 3374 (1985). Congress could not have stated more forcefully its intent to make forfeiture one of the strongest weapons in the government's arsenal in the war against drug trafficking.

The legislative history to the innocent owner defense is fully consistent with the purpose of the Comprehensive Crime Control Act as it clearly indicates that either knowledge or consent on the part of the claimant would preclude her from escaping the forfeiture. When Congress formulated the defense in section 301 of the Psychotropic Substances Act of 1978, it stated that "property would not be subject to forfeiture unless the owner *knew or consented* to the fact that ... the property was used or intended to be used to facilitate any violation of Federal illicit drug laws." Joint Explanatory Statement of Titles II and III, 124 Cong.Rec. S. 17647 (October 7, 1978) *reprinted at* 1978 U.S.Code Cong. & Admin.News 9496, 9518, 9522 (1979) (emphasis supplied). To me, this language shows that Congress has been consistent in its use of the disjunctive phrase, "knew or consented" and thus its requirement in § 881(a)(7) that the claimant negate both alternatives was purposeful.[2] I shall not retread the remainder of the panel's legislative analysis, all of which leads inexorably to the conclusion that Congress meant "or" when it said "or." Instead, I will only state that it is highly implausible that Congress, in enacting provisions clearly intended to strengthen the forfeiture weapon, left a massive loophole in them.

I also point out that prior to the enactment of § 881(a)(7), most courts of appeals, adopting dictum from *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, at 689–90, 94 S.Ct. 2080, at 2094–95,[3] held

---

**2.** The panel apparently believed that its construction of § 881(a)(7) finds support in Congress's statement that " 'a substantial connection [must exist] between the property and the underlying criminal activity which the statute seeks to prevent.' " 886 F.2d at 625 (quoting 1978 U.S.Code Cong. & Admin.News at 9522). However, this "substantial connection" is furnished by the government's prima facie evidence that drug-related activities occurred on the premises. *See United States v. Santoro*, 866 F.2d 1538, 1542 (4th Cir.1989); *United States v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d

1093, 1097 (8th Cir.1989). The nexus between the property and the criminal activity is completely irrelevant to the claimant's status as an innocent owner.

**3.** In *Calero–Toledo*, the Supreme Court suggested that a claimant could defeat a forfeiture by proving "not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Id.*

that the innocent ownership defense imposes on the owner an affirmative duty to prevent the property from being used illegally. *See, e.g., United States v. One 1982 28' Int'l Vessel*, 741 F.2d 1319, 1322 (11th Cir.1984); *United States v. One Tintoretto Painting*, 691 F.2d 603, 607 (2d Cir.1982); *United States v. One 1957 Rockwell Aero Commander*, 671 F.2d 414, 418 (10th Cir.1982). Nothing in the legislative history to § 881(a)(7) indicates that Congress had any intention of modifying the standard for innocent ownership applied in the above cases. A successful assertion of the defense still requires the claimant to prove "not only that [she] was uninvolved in and unaware of the activity upon which the forfeiture is sought, but also that [she] did everything that reasonably could be expected of [her] to prevent the activity." *One 1980 Bertram 58' Motor Yacht*, 876 F.2d at 888.

Not only does the court relieve the owner of any affirmative duty to prevent the illegal use, but it denies forfeiture in all contested cases in which an innocent owner defense is advanced except where the owner both knew and consented to the criminal activity. But an owner of property who knowingly permits its use for criminal purposes supplies an instrumentality for the crime and thus is an accomplice to it, as she has "in some way associated [herself] with the criminal venture as something [she] wished to bring about and ... sought by [her] actions to make ... succeed." *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1103 (3d Cir. 1989). Thus, the court holds that forfeitures under § 881(a)(7) are only justified when the owner is in fact as criminally culpable as the drug dealer himself, a re-

sult completely at odds with the *in rem* character of the forfeiture proceeding and an extraordinary repudiation of the forfeiture cases going back at least to the founding of this country. *See The Palmyra*, 25 U.S. (12 Wheat.) at 14–15. This circumstance causes me to question whether the panel fully appreciated the implications of its opinion.

I anticipate that, as a practical matter, the panel's decision will severely hamper the government's efforts to confiscate properties used for drug trafficking. Where, as here, the property is held by a husband and wife as tenants by the entireties, the forfeiture may be meaningless should the wife prevail in her innocent owner defense. In that event, the wife's survivorship rights may remain intact, notwithstanding the forfeiture of the husband's interest.[4] In such circumstances, the government may encounter difficulty in selling the forfeited portion of the estate as the buyer's prospects for an estate in fee may depend on whether the wife predeceases her husband. Indeed, the most likely buyer for the government's interest would be the wife, the only person situated to acquire a noncontingent fee estate. Obviously, this result would defeat the purpose of the forfeiture because the husband could then return to the scene of the crime following his release from the penitentiary. Although this result may be unavoidable where the wife is truly innocent, I am constrained to disagree with a decision which multiplies the instances in which such problems arise.[5]

An even more disturbing consequence of the decision is that it sets up the possibility of collusive conduct between the spouses. The decision is an open invitation to a mar-

---

**4.** *See Sterrett v. Sterrett*, 401 Pa. 583, 166 A.2d 1, 3 (1960); *King v. Greene*, 30 N.J. 395, 153 A.2d 49 (1959). Of course, this is not the place to discuss in detail state property law and how it may interact with federal forfeiture law. It is sufficient for present purposes simply to point out the problem.

**5.** My concern about this matter is hardly speculative. Two district courts have already adopted different approaches to the disposition of marital property following the forfeiture of one spouse's interest. *Compare United States v.*

*South 23.19 Acres of Land*, 694 F.Supp. 1252, 1254 (E.D.La.1988) (ordering sale of family residence with division of proceeds between government and innocent spouse on the ground that Louisiana law permits creditors of individual spouses to reach community property) *with United States v. One Parcel of Real Estate at 11885 S.W. 46th Street*, 715 F.Supp. 355, 360 (S.D.Fla.1989) (holding that state property law is completely preempted by federal forfeiture statute).

ried narcotics dealer to place a real estate title in his or her spouse's name so as to avoid the forfeiture. While in other contexts, courts have held that record owners who acquired title as a result of sham real estate transactions lacked standing to contest the forfeiture, *see United States v. Lot 9, Block 1, Village East Unit 4,* 704 F.Supp. 1025, 1029 (D.Colo.1989), the spouse of a narcotics dealer would have little difficulty proving a sufficient ownership interest to overcome the standing barrier. Thus, the decision of the court will encourage the establishment of family sanctuaries for drug transactions.

I appreciate the fact that enforcement of the forfeiture laws may produce discord in some marriages since to preserve her property rights, a wife may have to advise the authorities of the activities of her husband. However, that fact does not justify the court's holding that a wife who is intimately aware of her husband's criminal activity may nonetheless escape forfeiture through a no consent defense. Section 881(a)(7) contains no suggestion that the burden of proving innocent ownership is any less stringent when it is carried by a spouse seeking to retain marital property than when advanced by a third party. *See United States v. Parcel of Real Property known as 3102 Caughey Road,* 715 F.Supp. 131, 133 (W.D.Pa.1989).[6]

Furthermore, even if something in § 881(a)(7) permitted us to weigh the wife's interest in the marriage against the general public interest in the forfeiture, I do not see how forfeiture could be avoided. Though the wife by taking action against her husband to save her home might well destroy her marriage, this circumstance would have to be weighed against the fact that the husband is participating as a drug dealer in the destruction of the fabric of our society. Congress is well aware of the evils of the drug business and, as one court has indicated, has enacted laws which because of their *in rem* nature will "create new members of the homeless" among the families of drug dealers. *United States v. Tax Lot 1500,* 861 F.2d at 235. While I prefer to think that it is the conduct of the individuals involved and not the forfeiture laws which may leave drug dealers' families homeless, for our purposes the distinction involves only semantics, as regardless of how the matter is viewed a court may not "stop a forfeiture on account of hardship or unfairness alleged by the claimant." *United States v. One 1985 Mercedes Benz Automobile,* 716 F.Supp. at 213. I have no doubt at all but that the interests of the public in the forfeiture of property used in the serious offenses described in § 881(a)(7) will always outweigh the private marital interest of a wife who permits the illicit use of the property. Indeed, if the destruction wrought by drug dealers is brought home to their own families, perhaps at least some of them may be dissuaded from their activities.

In view of the plain language of § 881(a)(7), its equally clear legislative history, and the great significance of the holding in this case, rehearing in banc should be granted. By reconsidering the matter we could recognize that Congress has been stiffening the penalties for drug related offenses in an effort to combat a national drug problem of epidemic proportion. In legislation ranging from the Controlled Substances Penalties Amendments Act of 1984,[7] to the Narcotics Penalties and Enforcement Act of 1986,[8] and to the Anti-Drug Abuse Act of 1988,[9] Congress has sent out a clear message that narcotics offenses are to be dealt with harshly. Con-

---

**6.** It is noteworthy that the panel's opinion is not limited to the husband-wife context. Thus, the panel does not suggest that Congress intended a special rule, perhaps predicated in some way on the traditional husband-wife testimonial privilege, to be applicable in this case. Rather, the panel's holding is wide open and applies to any owner of a property used for an applicable offense regardless of the relationship of the owner to the drug offender.

**7.** Pub.L. No. 98–473, 98 Stat. 1837, 2068, § 501, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182.

**8.** Pub.L. No. 99–570, 100 Stat. 3207, 3207–2, § 1001, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5393.

**9.** Pub.L. No. 100–690, 102 Stat. 4181, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5937.

gress's provision for civil forfeiture of real property in the Comprehensive Crime Control Act of 1984 is a critical part of its legislative drive to wipe out drug trafficking. Yet in the midst of a national blizzard of anti-drug legislation and activity, the court declines to reconsider a decision which expands the innocent owner defense to § 881(a)(7) beyond the statute's literal language and beyond anything Congress could have intended.

In closing I emphasize that the decision is completely contrary to what Justice Brennan indicated in *Calero–Toledo v. Pearson Yacht Leasing Co.* is a "long line of prior decisions of [the Supreme Court which] establish the principle that statutory forfeiture schemes are not rendered unconstitutional because of their application to the property interests of innocents" and to the fact, as described by Justice Brennan, that "[d]espite this proliferation of forfeiture enactments, the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense." 416 U.S. at 680, 683, 94 S.Ct. 2090, 2092.[10] I find it impossible to believe that Congress has suddenly jettisoned hundreds of years of forfeiture law and practice and, in the face of the drug crisis, adopted a new and lenient approach which allows a property owner with knowledge of the illicit use of her property to permit the use to continue and yet retain its title. By its holding, the court has relieved many property owners of any accountability for narcotics transactions conducted on their premises. Because I believe that Congress could not possibly have intended the result reached by the panel, I dissent from the order denying rehearing.

Circuit Judges HUTCHINSON and NYGAARD join in this dissent.

---

**10.** I also have been struck by the grudging application of § 881(a)(7) in the panel's decision as compared to the opinions of the circuit and district judges in the many recent forfeiture cases cited in this opinion. It is as if there is an entirely different approach in this circuit.