**UNITED STATES of America, Plaintiff,**

**v.**

**ONE SHARP PHOTOCOPIER, MODEL SF–7750, SERIAL NUMBER 86210469; One 620 Memory Writer, Serial Number 520390, Defendants.**

Civ. No. 4–90–105.

United States District Court, D. Minnesota, Fourth Division.

Aug. 23, 1991.

Jerome G. Arnold, U.S. Atty., and Mary Jo Madigan, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

David L. Holker, Coon Rapids, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's motion for a finding of probable cause for forfeiture and for summary judgment.

FACTS

This action involves forfeiture proceedings under 17 U.S.C. § 509 instituted by the United States against defendant property belonging to claimant David L. Holker. The defendant property was allegedly used to accomplish Holker's alleged piracy of computer software.

David L. Holker is the president of Body Analyzers, Inc. (Body Analyzers), a Minnesota corporation formed in October of 1987. Claimant hired Lorraine Jewett as a part-time secretary and Charles Amundsen as a part-time sales representative.

In June 1987, Biodynamics Corporation (Biodynamics) owned the copyright for the BC–300 Body Composition Analysis System, a computer hardware and software package designed for analyzing the physical condition of the subject and recommending an appropriate diet and exercise regimen. Later, Space Labs Health Services Company (Space Labs) obtained the rights from Biodynamics to distribute the BC–300 Body Composition Analysis System as one of its vendors.

On November 11, 1987, Space Labs, through its director, Brad Harlow, and its president, Patrick Walsh, entered into an exclusive dealership agreement with Body Analyzers for the BC–300 and its operations manual. In April 1988, Space Labs discontinued its relationship with claimant because he breached their agreement by defaulting on his payments.

In July 1988, Biodynamics obtained the copyright for BC Profile, a software package designed for use with the BC–300, and began commercial distribution through its vendors, including Space Labs. Although claimant placed an order for BC Profile, Space Labs refused to sell him the program because of his default. Amundsen, claimant's sales representative, then ordered and purchased the software from Space Labs in his own name for claimant.

In October 1988, claimant purchased the defendant photocopier. He then began producing duplicates of the software package by reproducing the software with Amundsen at a local Radio Shack, and by photocopying the operations manual, with the Biodynamics copyright notification redacted, on defendant photocopier. Jewett, claimant's secretary, typed labels, allegedly on the defendant Memory Writer, which were then placed on each diskette containing BC Profile. Claimant maintained at least one original program and one operations manual from which to make duplicates, and began marketing duplicate software packages of BC Profile through Body Analyzers. He sold approximately twelve to eighteen packages at $200 each.

Edward Rifkin, president of Biodynamics, discovered that Body Analyzers was marketing BC Profile as its own product. He contacted an Assistant United States Attorney in the Western District of Washington, who notified the Federal Bureau of Investigation. On August 9, 1989, Special Agent David G. Ego of the Federal Bureau of Investigation ordered and purchased the BC Profile software package from Body Analyzers. On August 13, Ego received a box bearing a Body Analyzers shipping label. Inside the box the agent found, among other things, two diskettes labeled "BC Profile" and an operations manual with the Biodynamics copyright notification redacted.

The government seized defendant property pursuant to a search warrant on August 29, 1990. On February 14, 1990 plaintiff filed a verified complaint against defendant property alleging that it was subject to forfeiture pursuant to 17 U.S.C. § 509.

Claimant filed an answer on May 14, 1990, maintaining that he was authorized to duplicate BC Profile. There is no indication of whether the government charged the claimant with criminal copyright infringement in violation of 17 U.S.C. § 506(a). Plaintiff now brings this motion for a finding of probable cause and for summary judgment on its complaint against defendant property.

DISCUSSION

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

 Title 17 U.S.C. § 506(a) prohibits the willful infringement of a copyright if done for purposes of commercial advantage or private financial gain. *See* 17 U.S.C. § 506(a). Title 17 U.S.C. § 509(a) authorizes the forfeiture of all the mechanisms by which such violations are accomplished:

All copies ... manufactured, reproduced, distributed, sold or otherwise used, intended for use, or possessed with intent to use in violation of [17 U.S.C.] section 506(a), and all ... electronic, mechanical, or other devices for manufacturing, reproducing, or assembling such copies or phonorecords may be seized and forfeited to the United States.

17 U.S.C. § 509(a). Under 19 U.S.C. § 1615, made applicable by 17 U.S.C. § 509(b), the government must initially show probable cause for the institution of forfeiture proceedings. *See United States v. Premises Known as 3639 2nd St. N.E., Minneapolis, Minnesota,* 869 F.2d 1093, 1095 (8th Cir.1989). In this context, probable cause is defined as "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id. (quoting United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980)). The government may show probable cause on the basis of whatever evidence traditionally establishes probable cause, including hearsay. *See United States v. Parcel of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 621 (3d Cir.), *reh'g denied,* 890 F.2d 659 (3d Cir.1989); *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983). Although a criminal conviction would generally suffice to demonstrate probable cause, *see United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th Street, New York, New York,* 901 F.2d 288, 292 (2d Cir.1990), such a conviction is not a prerequisite to a civil forfeiture proceeding. *Id.; see United States v. Dunn,* 802 F.2d 646, 647 (2d Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987);

*United States v. $152,160.00 United States Currency,* 680 F.Supp. 354, 356 (D.Colo. 1988).

 Once the government establishes probable cause, the burden in forfeiture proceedings shifts to the claimant. *See* 19 U.S.C. § 1615; *Premises Known as 3639 2nd St. N.E., Minneapolis, Minnesota,* 869 F.2d at 1095. The claimant then must demonstrate by a preponderance of the evidence that the defendant property was not involved in illegal activity. *See* 19 U.S.C. § 1615; *Premises Known as 3639 2nd St. N.E., Minneapolis, Minnesota,* 869 F.2d at 1095; *One Blue 1977 AMC Jeep CJ-5 v. United States,* 783 F.2d 759, 761 (8th Cir. 1986). If the claimant fails to meet this burden, the government's showing of probable cause alone will support summary judgment of forfeiture. *See Premises Known as 3639 2nd St. N.E., Minneapolis, Minnesota,* 869 F.2d at 1095.

Thus, the burden in the case at bar initially rests on the government to demonstrate probable cause. The evidence presented by the government first consists of the affidavit of Special Agent Ego. In his affidavit, Ego asserts that he initially suspected that claimant engaged in copyright infringement when contacted by Stephen C. Shroeder, an Assistant United States Attorney in the Western District of Washington. Shroeder notified Ego that executives of Biodynamics had contacted his office and reported the illegal duplication of its copyrighted BC Profile software package, including the software and operations manual. Ego allegedly began his criminal investigation when an acquaintance of a Biodynamics executive managed to obtain BC Profile from Body Analyzers. Ego then sent a letter to Body Analyzers requesting promotional literature. Claimant sent him a package of documents which included photostatic copies of BC Profile printouts and a portion of the operations manual. Ego then called Body Analyzers and spoke with Charles Amundsen. Ego ordered a "portable electronic body composition analyzer" and a computer software program. When the package arrived it contained, among other things, two five-

inch floppy discs labeled "BC Profile" and a photocopy of a "BC Profile" operations manual. Biodynamics' copyright warning had been redacted from the operations manual. Ego also alleges to have personally observed Biodynamic's copyright warning appear on the computer screen when he initially ran the program.

In addition to the affidavit of Ego, the government presents the claimant's responses to its requests for admissions. Claimant admits that he copied the BC Profile program at a local Radio Shack. *See* Claimant's Answers to Plaintiff's Request for Admissions 4. Claimant also admits that he redacted the copyright warning, reproduced the operations manual on the defendant copier, then packaged the duplicated programs and manuals. *See* Claimant's Answers to Plaintiff's Request for Admissions 14, 15. Claimant further admits that he marketed the duplicate copies and sold between twelve to eighteen software packages for about $200 each. *See* Claimant's Answers to Plaintiff's Request for Admissions 9, 10.

The government finally presents summaries of several telephone conversations made by agents of the Federal Bureau of Investigation. One of these transcriptions describes a conversation between Lorraine Jewett, claimant's secretary, and Special Agent Paul T. Cowley. After Cowley identified himself and disclosed the investigative purpose of his telephone call, Jewett allegedly stated that although she could not be certain, she believed that claimant duplicated the software at a local Radio Shack. She also stated that before packaging each order for BC Profile, she typed out and placed the appropriate label on each of the diskettes. Contrary to the government's assertion in its memorandum of law in support of its motion for summary judgment, however, Jewett did not indicate during that conversation that she typed the labels on defendant Memory Writer.

█ In sum, the claimant admits that he duplicated BC Profile operations manuals on the defendant photocopier. These admissions raise more than a mere suspicion of guilt. The government has therefore met its burden of showing probable cause with respect to the defendant photocopier. The government has failed, however, to produce any evidence linking the defendant Memory Writer to the admitted copyright violations. Although the burden shifts to the claimant to disprove that defendant photocopier was used for unlawful activity, the government has failed to show probable cause with respect to defendant Memory Writer.

Because the plaintiff has shown probable cause with respect to defendant photocopier, the burden then shifts to the claimant to prove by a preponderance of the evidence that defendant photocopier was not involved in illegal activity. Here, claimant admits that he personally redacted the Biodynamics copyright notice and reproduced the altered operations manual. Claimant also admits that he photocopied the manuals on the defendant. He has presented no affidavits to the Court; instead, the claimant presents mostly transcriptions of alleged telephone conversations with Space Lab employees. Claimant did not present the actual tape recordings. The claimant does allege that Biodynamics authorized his reproduction of BC Profile, but does not submit any evidence to that effect. By failing to submit evidence, the claimant has failed in his burden of demonstrating that there remains a genuine dispute as to any material issues of fact. The plaintiff is therefore entitled to summary judgment of forfeiture of defendant photocopier as a matter of law.

Based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. the Court finds that plaintiff has established probable cause for the forfeiture of defendant photocopier pursuant to 17 U.S.C. § 509;

2. plaintiff's motion for summary judgment for forfeiture of defendant photocopier is granted;

3. the Court finds that plaintiff has failed to establish probable cause for the

forfeiture of defendant Memory Writer pursuant to 17 U.S.C. § 509;

4. plaintiff's motion for summary judgment with respect to defendant Memory Writer is denied; and

5. plaintiff release defendant Memory Writer and return it to the custody of the claimant forthwith.

LET JUDGMENT BE ENTERED ACCORDINGLY.