895 F.2d 1063
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1986 NISSAN MAXIMA GL., Defendant,
Kandis Williams, Claimant-Appellant.
 No. 89-3510
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 March 8, 1990.
 Frank G. DeSalvo and Dianne E. Varisco, New Orleans, La., for claimant-appellant.
 Constantine D. Georges, Asst. U.S. Atty. and John Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, GARWOOD and JOLLY, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Kandis Williams appeals the forfeiture of a car titled in her name which the government successfully contended was purchased with proceeds derived from transactions involving controlled substances. Concluding that the government acquitted its burden of proof and that Williams failed to satisfy hers, we affirm.
 
 Background
 
 2
 Invoking 21 U.S.C. Sec. 881(a)(6), the government sought civil forfeiture of one 1986 Nissan Maxima GL automobile, VIN JN1HU11S8GT138975, alleging that Jonathan Johnson, a convicted drug dealer, had given Kandis Williams, his girlfriend, the money for its purchase from the proceeds of his illicit drug trafficking. Williams claimed ownership and denied that Johnson had provided her with the purchase funds.
 
 
 3
 The government offered the testimony of agent Susan Nave of the Drug Enforcement Administration, one of the agents assigned to the investigation of Jonathan Johnson. Agent Nave testified that Johnson had no source of income other than his drug activities. She further testified that Alexander Baker, one of Johnson's associates, and Reginene Hall, a female friend of Johnson, both informed her that Johnson had told them that he had purchased the Nissan for Williams.
 
 
 4
 The evidence reflects that Williams, who netted approximately $700 per month from her job as a clerk with a savings and loan association, purchased the auto in July 1986 with a $9,000 down payment. This substantial down payment was required because Williams' credit rating was tainted by a recent default on a $5,000 student loan. Williams initially wrote a check which was returned for insufficient funds. She then made the down payment in cash in small bills. The balance was financed through a GMAC loan calling for 48 monthly payments of $320. Williams accelerated the payout, paying the balance in January 1988 with her personal check for $8,348.29.
 
 
 5
 Williams' bank records reflect a deposit of $8,400 on the day before she paid the balance on the Nissan. She could not explain the source of that deposit. The average monthly balance in her checking account had never previously exceeded $600, however, and her largest prior deposit therein had been $300. Her checking and savings accounts together never totaled as much as $9,000. Her bank records also show a $4,000 deposit in her savings account on May 25, 1988, the date Johnson's sister may have accessed Johnson's safety deposit box. Nave testified that Johnson was arrested on May 23, 1988. Intelligence developed during the Johnson investigation indicated that he kept substantial sums of cash in his safety deposit box. A warrant executed on June 3, 1988 for the search of Johnson's bank box revealed it to be empty. Access records for the box showed an entry initialed by a PB on May 25, 1988. Johnson has a sister named Patricia Beal.
 
 
 6
 The parties stipulated that if called to the stand DEA agent Pat Warner would have testified substantially the same as agent Nave and if the salesman who sold the car to Williams were called to testify he would have attested to her poor credit rating, the dishonored check, and the cash down payment in small bills.
 
 
 7
 Reginene Hall testified that Johnson had told her that he had bought a Maxima automobile for Williams. She further testified that she knew Johnson was involved in the drug traffic, that it was his sole source of income, and that he carried large sums of money on his person.
 
 
 8
 Williams testified that she had dated Johnson and that he had given her money on occasion, but she denied that he had bought the car for her. She stated that she had purchased the auto with money saved from her salary, a $6,500 award from a personal injury lawsuit, gifts from friends and relatives, and money derived from babysitting and salvaging aluminum cans. Although she worked for a savings and loan association she kept most of her money in a metal box in her home. Her explanation for doing so was, at best, exceedingly dubitante.
 
 
 9
 On cross-examination Williams conceded that the largest gift she had ever received was $500 from her father sometime in 1980, and that her savings from babysitting and saving aluminum cans did not exceed $1,500. And although maintaining that she lived at home and had no expenses other than the note on the Nissan, her checking account records reflected monthly debits running as high as $1,600 beginning in December 1987.
 
 
 10
 The trial judge, crediting the testimony of the government witnesses and obviously declining to credit that of Williams, found that the government had established probable cause to believe that the Nissan had been purchased with proceeds derived from Johnson's drug trafficking, and that Williams' offsetting evidence was wanting. The court ordered the auto forfeited to the government and Williams timely appealed.
 
 Analysis
 
 11
 In a forfeiture action under 21 U.S.C. Sec. 881(a)(6) the government bears the initial burden of demonstrating "probable cause for belief that a substantial connection exists between the property to be forfeited and a crime under Title 21 of the United States Code." United States v. $64,000.00 in U.S. Currency, 722 F.2d 239, 244 (5th Cir.1984). The proof of probable cause required is "a reasonable ground for belief ... supported by less than prima facie proof but more than mere suspicion," United States v. One 1978 Chevrolet Impala, Etc., 614 F.2d 983, 984 (5th Cir.1980). The government may establish the basis for the forfeiture by demonstrating "by some credible evidence the probability that the money was in fact drug-related." United States v. $215,300 U.S. Currency, 882 F.2d 417, 419 (9th Cir.1989) (quoting United States v. Dickerson, 873 F.2d 1181 (9th Cir.1988) (emphasis in original)). The requisite probable cause may be proven by both circumstantial and hearsay evidence. United States v. $321,470.00, U.S. Currency, 874 F.2d 298 (5th Cir.1989); United States v. One 56-Foot Motor Yacht Named the Tahuna, 702 F.2d 1276 (9th Cir.1983).
 
 
 12
 The testimony of agent Nave and Reginene Hall, the stipulated testimony of agent Warner and the auto salesman, and Williams' bank records sufficiently support a finding of probable cause to believe that the money used to purchase the Nissan came from Johnson, whose sole source of income derived from illicit drug transactions. The government's evidence satisfied its burden of proof.
 
 
 13
 This probable cause finding does not, however, automatically result in forfeiture. Upon its establishment the burden shifts to Williams to prove by a preponderance of the evidence that the money in question came from an independent, non-drug-related source. United States v. $364,960.00 in U.S. Currency, 661 F.2d 319 (5th Cir.1981).
 
 
 14
 Williams contends that even if the government carried its burden of proof she adequately rebutted and showed by a preponderance of the evidence that the money she used to pay for the Nissan came from sources other than Johnson. The trial judge was not persuaded, nor are we. Read from a bare record, her explanations are less than credible and the record before us is absolutely void of any basis for rejecting the trial court's credibility assessments. We cannot conclude that the trial judge's fact findings are clearly erroneous, Fed.R.Civ.P. 52(a), $215,300 U.S. Currency; indeed, we find them patently correct.
 
 
 15
 The decision of the district court is AFFIRMED.