UNITED STATES of America, Plaintiff–Appellee,

v.

LOT 9, BLOCK 2 OF DONNYBROOK PLACE, HARRIS COUNTY, TEXAS, Defendant,

Kenneth Latham Roberts and Sheila Roberts, Claimants–Appellants.

No. 89–2910.

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1990.

that a partial owner does not lose her interest in forfeited property if she was not involved in illegal drug transactions. Sheila Roberts raised a genuine issue as to her knowledge about or consent to her husband's drug-related activity. Consequently, we REVERSE the district court judgment as to her, and we REMAND this case so that the district court can determine whether she is an "innocent owner." If she is, she is entitled to retain her interest in the house.

George O. Jacobs, Houston, Tex., for claimants-appellants.

Peggy Morris Ronca, Gordon Speights, Asst. U.S. Attys., Kenneth Magidson, Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, THORNBERRY and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Kenneth and Sheila Roberts own a house in Houston, Texas. The government alleges that in January and February, 1987, the Robertses used that house to distribute drugs to a government witness, Dean Ireland. Based on these assertions, the government filed a complaint asking that the Robertses' home be forfeited to the United States. *See* 21 U.S.C.A. § 881(a)(7) (West Supp.1990). The district court granted the government's request by issuing summary judgment in the government's favor. The Robertses appeal that decision.

The government's evidence showed probable cause to believe that Kenneth Roberts used the house to provide Ireland with drugs, and Kenneth Roberts failed to effectively rebut that showing. Therefore, we AFFIRM the portion of the district court judgment that forfeited the interest of Kenneth Roberts in the house to the government. But section 881(a)(7) provides

I.

In 1987, the Federal Bureau of Investigation (FBI) received information that the Robertses' home was being used to distribute illegal drugs. To verify this, Special Agent Robert Relick employed Dean Ireland to go into the house and purchase drugs. Ireland was rigged with an electronic device that transmitted his conversations to a radio in a government vehicle. Relick and another Special Agent, Donald Bishop, monitored these transmissions and recorded them. Later, the agents had these recordings transcribed and reproduced onto casette tapes.

In early 1987, Ireland met with Kenneth Roberts inside the house four times: January 26, February 4, February 27, and February 28. The activity between Ireland and Roberts on two of these days forms the basis of this forfeiture action.

On January 26, Roberts sold Ireland fifty "D's"[1] (slang, according to the government, for "dilaudid tablets") and nineteen Valium tablets for a total price of $1300. Relick and Bishop took the pills from Ireland after he left Robertses' house. Subsequent analysis confirmed that the dilaudid tablets contained Hydromorphone and the Valium contained Diazepam, both of which are controlled substances.

On February 28, Ireland indicated to Roberts that he was interested in buying some cocaine, and Roberts gave Ireland two milligrams of the drug as a sample in order to allow Ireland to test its quality.

---

1. The transcript of the taped conversation reads fifty "G's," but the tape itself and the surrounding facts confirm the government's assertion that both Ireland and Roberts said "D's."

Again, the agents took the substance from Ireland after he left Robertses' house, and subsequent laboratory tests verified that it was cocaine. On March 5, 1987, the Houston Police Department, along with the two FBI Agents, executed a search warrant and discovered one pound of marijuana and 150 dilaudid tablets in the house.

On January 29, 1988, the government filed its civil complaint seeking the forfeiture of the Robertses' house under 21 U.S.C. section 881(a)(7), which provides that

[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [Title 21] punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

The Robertses denied that the house had been used to violate Title 21. Their attorney, George Jacobs, then attempted to depose the government's only witness, Dean Ireland. The government's attorney, Samuel Longoria, agreed that Jacobs could depose Ireland on September 30, 1988, in Denver, Colorado, and the FBI assured Jacobs that Ireland would be in Denver for the deposition. Ireland never appeared. Jacobs then asked the government to reimburse his clients for the $417 that they spent on his futile trip from Houston to Denver. The government never responded to this request.[2]

In January 1989, the government filed a motion for summary judgment and, in support, attached the tape recordings of the conversations between Ireland and Kenneth Roberts, transcripts of those tapes, affidavits of Relick and Bishop, and the reports of the laboratory analyses confirming that the substances that Ireland possessed when he left the Robertses' house were controlled substances. In response to the government's motion, Kenneth and Sheila Roberts presented their own affidavits and answers to the government's interrogatories, which contradicted the government's version of the facts. In May 1989, the district court granted the government's motion and ordered the house forfeited to the United States.

## II.

▮ We need give no deference to the district court's decision to grant summary judgment in favor of the government; we apply Rule 56(c) of the Federal Rules of Civil Procedure and use the same standard that governed the district court. *See Miles v. American Tel. & Tel. Co.*, 703 F.2d 193, 194 (5th Cir.1983). Therefore, we should affirm the decision to grant summary judgment if our review of the record confirms that there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

▮ The government's burden of proof is the same for all forfeiture actions under section 881. *See* 21 U.S.C.A. § 881(d) (West Supp.1990); 19 U.S.C.A. § 1615 (West 1980 & Supp.1990). The government bears the initial burden of demonstrating probable cause to believe that the Robertses' house was used to dis-

---

**2.** The Robertses never made a motion to the district court or to this court asking for reimbursement of the expenses Jacobs incurred travelling to Denver. The government did send Jacobs notice of the taking of Ireland's deposi-

tion, but we cannot order the government, *sua sponte*, to reimburse the Robertses because the record does not indicate whether the government subpoenaed Ireland. *See* Fed.R.Civ.P. 30(g)(2).

tribute or store illegal drugs. *See United States v. One 1986 Nissan Maxima GL*, 895 F.2d 1063, 1064 (5th Cir.1990). "Probable cause" under section 881 is tested by the same criteria used to determine whether probable cause exists for a valid search and seizure: whether the government has provided a reasonable ground for believing that the house was used for illegal purposes. *See United States v. One 1985 Chevrolet Corvette*, 914 F.2d 804, 809 (6th Cir.1990); *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir.1983). "If unrebutted, a showing of probable cause alone will support a forfeiture." *Little Al*, 712 F.2d at 136.

The district court found that the government had made a sufficient showing of probable cause to warrant forfeiture of the house and that the evidence produced by the Robertses was inadequate to rebut that showing.[3] Because Kenneth and Sheila Roberts both own the house, we will examine the district court's conclusions as to each claimant separately.

### A. Kenneth Roberts

■ The government has shown probable cause for believing that Kenneth Roberts distributed illegal drugs to Dean Ireland on January 26 and February 28. The tapes of the conversations between Ireland and Roberts are difficult to understand, but they are clear enough to support the government's version of what happened on those days. For example, at one point Roberts can clearly be heard counting out fifty "D's," one by one, to sell to Ireland. In addition, the government submitted affidavits from the two FBI agents who monitored the conversations between Ireland and Roberts and swore that Ireland left the house with the drugs that Roberts had turned over to him. Finally, laboratory tests confirmed that the substances Ireland gave the agents were illegal narcotics.

■ Roberts offered two documents to rebut the government's evidence. First, in his answers to the government's interrogatories, he denied selling dilaudid or Valium to Ireland and denied giving Ireland a sample of cocaine. Second, in his affidavit, he made the following statement:

> In order to properly prepare an affidavit in opposition to plaintiff's motion for summary judgment in this action it is necessary that I the defendant take the deposition of Dean Ireland. Such witness is competent to testify and I expect to prove the following facts: to wit, that I never engaged in any illegal drug activity with the said Dean Ireland.

To effectively refute the government's proof, Roberts may not rest upon mere denials of the government's complaint but "must set forth specific facts showing that there is a genuine issue for trial." *See* Fed.R.Civ.P. 56(e). The general denials in his answers to the government's interrogatories do not meet this burden, *see Vidrine v. Enger*, 752 F.2d 107, 110 (5th Cir.1984), and his affidavit fares no better. For one thing, Roberts's affidavit does not say that he never engaged in illegal drug activity with Ireland; it says that he "expect[s] to prove" that he never engaged in such activity. Thus, the affidavit does not contradict the government's evidence.

Even if we were to interpret Roberts's affidavit as a denial that he had distributed drugs to Ireland, Roberts still has done no more than abjure the government's allegations. He provides no facts at all that would support his contention. He does not proffer any interpretation of the tapes that would contradict the government's version. Therefore, his conclusional statement denying culpability, which fails to controvert any of the facts alleged by the government, cannot defeat the government's motion for summary judgment even though his statement appears in an affidavit. *See May v. Department of the Air Force*, 777 F.2d 1012, 1016 (1985), *reh'g denied*, 800 F.2d

---

**3.** It is not clear which portion of the district court's ruling the Robertses are contesting. In their brief, they assert that the evidence produced by the government was insufficient to establish probable cause; at oral argument, they conceded that the government had met its burden of demonstrating probable cause but contended that their affidavits raised issues of material fact which only a jury could resolve.

1402 (5th Cir.1986); *Simmons v. Lyons,* 746 F.2d 265, 268–69 (5th Cir.1984); *United States v. W.H. Hodges & Co.,* 533 F.2d 276, 278 (5th Cir.1976). *Compare United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres,* 904 F.2d 487, 492 & n. 3 (9th Cir.1990) (holding that defendant's detailed affidavit, which painted "a picture entirely different from that described by the government," was sufficient to avoid summary forfeiture of house, but noting that summary judgment for the government would have been upheld had the defendant's affidavit simply set forth conclusional allegations). *See also United States v. One Single Family Residence Located at 2901 S.W. 118th Court, Miami, Florida,* 683 F.Supp. 783, 788 (S.D.Fla. 1988) (holding that affidavit stating only that defendant did not know that property was being used for illegal drug transactions was insufficient to avoid summary judgment).

■ Alternatively, Roberts contends that the district court should not have rendered summary judgment so hastily but should have given him additional time to locate Ireland. *See* Fed.R.Civ.P. 56(f). Rule 56(f) gives the district judge discretion to grant a continuance if a party cannot obtain the facts that it needs to justify its opposition to a summary judgment motion, but Roberts has not explained how further delay would have helped him. *See Little Al,* 712 F.2d at 135. Both parties have tried to ferret out Ireland, but no one knows where he is. In fact, state criminal charges against Kenneth and Sheila Roberts were dropped in March 1989 because Ireland could not be located. The judge waited more than a year between the time the forfeiture action was filed and the time he granted summary judgment in the government's favor. Roberts gave no argument that would justify additional forbearance.

*B. Sheila Roberts*

■ Kenneth and Sheila Roberts both own the house that the government seized, and although Kenneth Roberts may have forfeited his interest, it does not follow that Sheila Roberts has lost hers. Section 881(a)(7) provides "that no property shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." Even though the government has shown probable cause to believe that the Robertses' house was used to distribute or store drugs, Sheila Roberts can shelter her interest under the "innocent owner" defense if she can prove, by a preponderance of the evidence, that these illegal acts were committed without her "knowledge or consent." *See United States v. One Parcel of Property Located at Rt. 1, Box 137, Randolph, Chilton County, Ala.,* 743 F.Supp. 802, 805 (M.D.Ala.1990). Because the district court terminated her interest by summary judgment, we only need to determine whether there exists a genuine factual dispute regarding her "knowledge or consent."

■ In contrast to the evidence of Kenneth Roberts's guilt, the government presented no evidence at all that Sheila Roberts was involved in drug-related activity. She did not participate in any of the drug transactions between her husband and Dean Ireland, and even though she was present when the FBI and the Houston Police discovered marijuana and dilaudid tablets in the house, the government made no assertion that she knew about these drugs before they were discovered.

In opposition to the dearth of evidence supporting the government's position, Sheila Roberts executed an affidavit stating that she was part owner of the property and had neither engaged in illegal drug activity with Dean Ireland nor seen her husband engage in illegal drug activity with Ireland. Her assertions, which are not contradicted by the government's evidence, raise a genuine issue regarding her knowledge and consent. Therefore, summary judgment was inappropriate.

The government has met its burden of showing probable cause. Consequently, after remand, Sheila Roberts must prove by a preponderance of the evidence that any violations of Title 21 which occurred in her

home transpired without her "knowledge or consent." *See United States v. Parcel of Real Property Known as 6109 Grubb Rd., Millcreek Township, Erie County, Pa.,* 886 F.2d 618, 626–27 (explaining the sequence of proof in establishing an "innocent owner" defense), *reh'g denied,* 890 F.2d 659 (3d Cir.1989). The Circuits are divided as to whether she must establish *both* a lack of knowledge and a lack of consent, or whether, if she had knowledge, she still is entitled to the defense if she did not consent. *Compare United States v. 141st Street Corp., by Hersh,* 911 F.2d 870, 878 (2d Cir.1990) (holding that "a claimant may avoid forfeiture by establishing either that he had no knowledge of the narcotics activity or, if he had knowledge, that he did not consent to it") *with United States v. One Parcel of Land, Known as Lot 111–B, Tax Map Key 4–4–03–71(4), Waipouli, Kapaa, Island and County, State of Hawaii,* 902 F.2d 1443, 1445 (9th Cir.1990) (holding that "if the claimant *either* knew *or* consented to the illegal activities, the 'innocent owner' defense is unavailable" (emphasis in original)). The Fifth Circuit has not taken a position, and it would be unwise for us to make Circuit law without a complete record and thorough briefing of this issue.

■ In addition, the record establishes that Sheila Roberts is part owner of the house, but does not explain the nature or extent of her interest, so we can offer the district court little guidance on how to protect her interest if she is successful. We can only say that her interest should be established by referring to Texas law, and the court should protect that interest to the extent that Texas law does not contravene the federal forfeiture scheme. *See United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Avenue, Miami, Fla.,* 894 F.2d 1511, 1518 (11th Cir.1990); *United States v. Parcel of Real Property Known as 6109 Grubb Rd.,* 890 F.2d 659, 664 & n. 4 (3d Cir.1989) (Greenberg, J., dissenting from denial of petition for rehearing). *E.g., United States v. South 23.19 Acres of Land,* 694 F.Supp. 1252, 1254 (E.D.La.1988) (holding that because claimant's husband had forfeited his interest in their house,

which was community property under Louisiana law, the government was entitled to a forced sale of the home, and, as an "innocent owner," she was entitled to one half of the proceeds).

### III.

The government has shown probable cause for believing that Kenneth Roberts distributed illegal narcotics to a government witness from his house, and Roberts failed to rebut this showing. Therefore, the government was entitled to a summary judgment in its favor, and we AFFIRM that portion of the district court judgment that disposes of Kenneth Roberts's interest in the house. But the affidavit of Sheila Roberts raises a genuine issue as to her involvement in her husband's activities, and the law allows her to retain her interest in the house if she truly was an "innocent owner." Consequently, we REVERSE that portion of the district court's judgment that affects her interest, and we REMAND for a hearing to determine whether, and to what extent, Sheila Roberts may exploit the "innocent owner" defense.