**UNITED STATES of America,**
**Plaintiff,**

v.

**ONE PARCEL OF REAL PROPERTY LOCATED AT ROUTE 2, Box 293, Lena, Mississippi, With All Appurtenances, Improvements, and Fixtures Situated Thereon, and All Proceeds Thereof, Defendant.**

No. Civ.A. 3:97–CV–96WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 4, 1998.

Robert G. Anderson, U.S. Attorney's Office, Criminal Division, Jackson, MS, for U.S.

Jerry L. Bustin, Jerry L. Bustin, Attorney, Forest, MS, for defendant.

### ORDER GRANTING FORFEITURE

WINGATE, District Judge.

Before this court are the motions of the United States of America to strike the claims of all parties declaring ownership interests in the defendant property and for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[1] The plaintiff in this action is the United States of America (hereinafter the "Government"). In the above-styled and numbered cause, a forfeiture proceeding against real property and a residence utilized by Braxton Townsend and his wife, Lora Townsend, the Government contends by legal fiction that the targeted property itself is guilty of facilitating crime. *See United States v. $38,570.00 United States Currency*, 950 F.2d 1108 (5th Cir.1992), citing *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 n. 12 (11th Cir.1987). On or about March 2, 1997, the

---

1. Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

Rule 56(c) provides in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

Government indicted Braxton Townsend on charges of: possession with intent to distribute cocaine base (crack); possession of a firearm in connection with a drug trafficking crime; money laundering; and failure to file the federal currency transaction reports required for currency transactions in excess of $10,000.00. On April 25, 1997, a duly constituted jury of his peers found Braxton Townsend guilty of all charges. Meanwhile, the Government was pursuing this forfeiture proceeding. This court's jurisdiction over this matter is predicated upon Title 28 U.S.C. §§ 1345 and 1355.[2]

## I. *JUDICIAL FORFEITURE PROCEEDINGS*

█ Procedure pertaining to forfeiture actions is governed by the Supplemental Rules for Certain Maritime and Admiralty Claims, Title 28 U.S.C. Supplemental Rule C[3] (hereinafter "Rule C" or "Rule C(6)"). The United States commences a judicial forfeiture by filing a verified complaint in the federal district court of the district where seizure occurred pursuant to Supplemental Rule C(2). The Clerk of the Court issues a summons and warrant for the arrest of the res pursuant to Supplemental Rule C(3) and delivers it to the marshal for service. *United States v. $38,-570.00 United States Currency*, 950 F.2d at 1113, citing *United States v. U.S. Currency Totalling $3,817.49*, 826 F.2d 785, 786–87 (8th Cir.1987); and *United States v. One Assortment of Eighty–Nine Firearms*, 846 F.2d 24, 27 (6th Cir.1988). Service must be made upon the res itself. *Id.*

**2.** Title 28 U.S.C. § 1345 provides in pertinent part that, "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

Title 28 U.S.C. § 1355(a) provides that, "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."

**3.** Supplemental Rule C reads, in pertinent part, as follows:

**Rule C(2) Complaint.** In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action. In actions for the enforcement of forfeitures for violation of any statute of the United States the complaint shall state the place of seizure and whether it was on land or on navigable waters, and shall contain such allegations as may be required by the statute pursuant to which the action is brought.

**(3) Judicial Authorization and Process.** Except in actions by the United States for forfeitures for federal statutory violations, the verified complaint and any supporting papers shall be reviewed by the court and, if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant and deliver it to the marshal for service.... In actions by the United States for forfeitures for federal statutory violations, the clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances.

**(4) Notice.** No notice other than the execution of the process is required when the property that is the subject of the action has been released in accordance with Rule E(5). If the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Such notice shall specify the time within which the answer is required to be filed as provided by subdivision (6) of this rule....

**(6) Claim and Answer; Interrogatories.** The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action....

at 1113, citing *$38,000*, 816 F.2d at 1545 n. 15; and *$3,817.49*, 826 F.2d at 787. However, where a potential claimant receives actual notice of the warrant, the potential claimant need not know the actual date of execution on the res before being required to respond with a verified claim, that is, a claim attested by oath or solemn affirmation. Actual notice of the warrant informs the potential claimant that execution of process on the property in question either has recently occurred or is imminent. *Id.* at 1114.

Supplemental Rule C(6) provides that anyone claiming ownership or other interest in the property that is the subject of the action must file a verified claim within ten (10) days after process has been executed or within such time as the court allows, and must file an answer to the complaint within twenty (20) days after the filing of the claim. Additionally, if the res is not released within ten days after execution of process, the Government must give public notice of the action in a newspaper of general circulation designated by the court in accordance with Supplemental Rule C(4), thereby giving notice to all par-

ties having any interest to file a claim and an answer. Such notice also must specify the time within which the answer is to be filed as provided by Supplemental Rule C(6). The notice need not refer to the filing of the claim. *United States v. $38,-570.00 United States Currency*, 950 F.2d at 1114.

## II. *BACKGROUND*

The Government's complaint was filed on February 13, 1997. The targets of the complaint are three acres of real estate and improvements purchased in the name of Willie Pearl Duplasser on April 18, 1993, from R.T. Trippe, Joyce Trippe and Arthur Lee Kincaid as recorded in Deed Book # 159 of the Land Records reposed in the Chancery Court of Leake County, Mississippi, at pages 408 and 409. The Government alleges that this property is forfeitable under Title 18 U.S.C. § 981(a)(1)(A),[4] which provides for the forfeiture of "any property, real or personal, involved in a transaction or attempted transaction in violation of Section 5313(a) or 5324 of Title 31,[5] or of Section 1956 or 1957 of Title 18[6] or any property traceable

---

**4.** Title 18 U.S.C. § 981(a)(1)(A) provides that, "[e]xcept as provided in paragraph (2), the following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324(a) of title 31, or of section 1956 or 1957 of this title, or any property traceable to such property. However, no property shall be seized or forfeited in the case of a violation of section 5313(a) of title 31 by a domestic financial institution examined by a Federal bank supervisory agency or a financial institution regulated by the Securities and Exchange Commission or a partner, director, or employee thereof."

**5.** Title 31 U.S.C. § 5313(a) provides in pertinent part that, "[w]hen a domestic financial institution is involved in a transaction ... of United States coins or currency ... in an amount ... the Secretary [of the Treasury] prescribes by regulation, the institution ... shall file a report on the transaction at the time and in the way the Secretary prescribes." Title 31 of the Code of Federal Regulations (C.F.R.), Section 103.22(a)(1)

provides in relevant part that, "[e]ach financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction of currency of more than $10,-000." Thus, federal law requires banks to file a currency transaction report ("CTR") with the Secretary of the Treasury for any cash transaction over $10,000. Federal law also forbids structuring a transaction for the purpose of evading a bank's requirement to file a CTR. *See* Title 31 U.S.C. § 5324(3), providing that, "[n]o person shall for the purpose of evading the reporting requirements of section 5313(a) ... (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institution."

**6.** Title 18 U.S.C. § 1956(a)(1)(B)(i) provides in pertinent part that, "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlaw-

to such property." *See United States v. 1988 Oldsmobile Cutlass Supreme 2 Door, et al.,* 983 F.2d 670, 673 (5th Cir.1993).

On February 19, 1997, the Government served Willie Pearl Duplasser, title owner of the property in question, a copy of the notice of forfeiture and the verified complaint. Duplasser responded with an *unverified* claim on March 3, 1997, followed by an answer to the verified complaint on March 24, 1997. Duplasser never sought to amend her claim or to provide verification.

The Government served Braxton and Lora Townsend with notice of the warrant on February 21, 1997, and thereafter posted the real property in question with the arrest warrant on February 27, 1997. Braxton and Lora Townsend filed a motion to dismiss and for additional time to plead on March 3, 1997, followed by a verified claim of equitable interest on March 13, 1997. This motion also asked this court to suspend the Rule C(6) requirement for an answer to the Government's verified complaint within 20 days pending final resolution of the criminal case against Braxton Townsend.

The property was not released within 10 days, and on the regular work days between March 27, 1997, and April 2, 1997, the Government caused to be published a notice of forfeiture in the Clarion Ledger, a newspaper of general circulation in the area, advising any party having interest in the subject property to file a claim and answer in this case. No other interested party came forward with any claim to, or interest in, the subject property. Meanwhile, Braxton and Lora Townsend never filed an answer to the Government's verified complaint, and Willie Pearl Duplasser

failed to file a properly verified claim. Braxton Townsend was found guilty of all the charges against him on April 25, 1997. Thus, the Government now asks this court to strike the pleadings of the Townsends and Duplasser in the forfeiture matter as defective and to grant the Government forfeiture pursuant to summary judgment.

To date, the Townsends still have not filed an answer. During Braxton Townsend's criminal trial, this court, in addressing the Townsends' motion for additional time to submit an answer, stated that the Townsends would not be required to file their answer until after completion of Braxton Townsend's trial. However, this court failed to enter a written order granting this suspension of the 20–day requirement and designating when the Townsends should answer. So, on January 29, 1998, this court rectified this oversight by entering an Order directing the Townsends to file under Rule C(6) within ten (10) days their answer to the Government's verified complaint. That same order also ordered the Townsends and Willie Pearl Duplasser to respond to the Government's motions to strike and for summary judgment and to show cause for their failure to respond. Neither Willie Pearl Duplasser nor the Townsends have responded as directed and the Government now moves for a final judgment of forfeiture.

### III. *APPLICABLE LAW UNDER TITLE 18 U.S.C. § 981*

In a civil forfeiture case brought pursuant to Title 18 U.S.C. § 981(a)(1)(A), the Government has the initial burden of showing probable cause for its belief that there exists a substantial connection between the property to be forfeited and the

---

ful activity—*** (B) knowing that the transaction is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity *** shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than

twenty years, or both." Section 1957(a) provides that, "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000.00 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)."

crime. *United States v. One 1987 Mercedes 560 SEL*, 919 F.2d 327, 331 (5th Cir.1990). The proof of probable cause is satisfied when there is "a reasonable ground for belief ... supported by less than prima facie proof but more than mere suspicion." *United States v. One 1986 Nissan Maxima GL*, 895 F.2d 1063, 1064 (5th Cir.1990), quoting *United States v. One 1978 Chevrolet Impala, Etc.*, 614 F.2d 983, 984 (5th Cir.1980). Once the government makes this showing, the burden then shifts to the claimant to demonstrate by a preponderance of the evidence that factual predicates for forfeiture have not been met, *1988 Oldsmobile Cutlass Supreme 2 Door, et al.*, 983 F.2d at 674, citing *United States v. $364,960.00 in United States Currency*, 661 F.2d 319, 325 (5th Cir.1981), or that a defense to the forfeiture applies. *Id.* at 674, citing *United States v. Little Al*, 712 F.2d 133, 136–37 (5th Cir.1983). Neither Willie Pearl Duplasser nor the Townsends have made any effort to demonstrate that they have any defense to the Government's allegations of probable cause set forth below.

### a. *Probable Cause*

■ In the instant case, the Government has presented the affidavit of Sarah Davidson, a special agent with the Criminal Investigation Division of the Internal Revenue Service. This affidavit sets forth the facts supporting the Government's showing of probable cause to believe that the property in question is connected to the crimes with which Braxton Townsend has been charged and convicted.

The affidavit notes that Braxton Townsend was arrested and convicted in 1986 for violating the controlled substance laws of the State of Illinois. According to the affidavit, Braxton Townsend pled guilty to the charge of distribution of Phencyclidine (PCP) and was sentenced to a two-year period of incarceration.

Relying on a confidential informant working with the Mississippi Bureau of Narcotics, Davidson submits that Braxton Townsend, a/k/a Butch Townsend, had been selling crack cocaine to the informant since August of 1995. The confidential informant provided the following information: that Braxton Townsend (and/or one Charles Kincaid) traveled to Milwaukee, Wisconsin, during early November, 1996, in order to pick up a kilogram of cocaine; that Braxton Townsend has a business establishment in Ludlow, Mississippi, where illegal liquor, moonshine, crack cocaine and marijuana were sold; and that Lora Townsend, the wife of Braxton Townsend, was aware of her husband's illegal drug dealing. According to the affidavit, Lora Townsend told the confidential informant that she knew of her husband's (Braxton Townsend) drug dealing activities but did not want him dealing from their home, the residence in question in the instant case.

Agent Davidson's affidavit further states that on November 14, 1996, agents of the Mississippi Bureau of Narcotics monitored a controlled purchase of crack cocaine by an agent from Braxton Townsend. Based on this observation, the agents executed a search warrant at the residence of Braxton Townsend on November 17, 1996, and recovered an amount of currency which included $100.00 of the Official State Funds used in the aforesaid controlled purchase of crack cocaine from Braxton Townsend.[7]

According to Agent Davidson, Lora Townsend told her that the Townsends' home located on the property in question was owned by them and built by Phil

---

7. Other items seized at the scene were: one small bag of cocaine discovered inside the pocket of a large man's coat; approximately four ounces of cocaine found in a hollowed-out car battery located in an outside storage building; three brown pill bottles and one Zest soap box all containing alleged crack cocaine found in a white Chevrolet van parked in the garage; one small ziplock bag containing an off-white residue; one ziplock bag containing a green-like residue; and one pack of Top rolling papers all found in a 1985 Honda Goldwing motorcycle. Also seized were three boxes of records found in various areas of the house.

Hutchins. Davidson says that Lora Townsend identified certain records locked in the master bedroom closet of the home as receipts and cancelled checks for the building costs on their home. The records show that the home was built between 1993 and 1994 for a cost of nearly $400,000.00.

Agent Davidson says she found no source of legitimate income which Braxton and/or Lora Townsend could have used to build a home costing nearly $400,000.00. According to Davidson, Lora Townsend told her and a Mississippi Bureau of Narcotics agent that she and her husband had no income during 1993, 1994 and 1995, except for her husband's disability benefits, and that their income in 1996 had come from Lora Townsend's beauty shop and her job at Taco Bell. Lora Townsend denied that Braxton Townsend owned any business or club. She also denied having inherited any large sums of money during these years or having won a lottery.

Davidson, relying on information obtained from the Mississippi Department of Health, found that the Townsends had received subsidies from the government, including food stamps, WIC food assistance, Aid for Dependent Children, and Medicaid. Davidson notes that in order to qualify for this assistance, recipients must disclose their financial status and their annual income. For the years 1994, 1995 and 1996, Lora Townsend reported annual income of $3,000.00, $8,472, and $11,240.00, respectively, which was within the range necessary to qualify for benefits.

Agent Davidson also found that Willie Pearl Duplasser did not have the income required to enable her to incur nearly $400,000.00 in construction costs. Information relied on by Davidson which was gathered by the Milwaukee, Wisconsin, Sheriff's Department shows that Duplasser received welfare benefits until late 1988. There was no showing that Duplasser earned any income after that date.

Notwithstanding the Townsends' poverty level income, they made substantial payments toward construction of the home on the subject property. According to Agent Davidson, Phil Hutchins, the contractor who built the Townsends' home, stated that he was paid between $10,000.00 and $20,000.00 in cash to begin the construction of the Townsends' home in August of 1993. Hutchins also stated that he was paid in cash usually every week thereafter until the home was completed. Hutchins said the final cost of the home was over $350,000.00. According to Davidson, Hutchins said that he never dealt with Willie Pearl Duplasser during the construction of this home. Instead, said Hutchins, he was paid by Braxton Townsend with cash Townsend claimed to have been derived from a construction business in Wisconsin. Hutchins said that he built the house for the Townsends, not Duplasser, and that it was the Townsends who had selected the appliances, fixtures and decor for the home, not Duplasser.

Diane Kincaid, a cousin to Braxton Townsend, told Agent Davidson that Braxton Townsend asked her to open a safe deposit box for him about the time he started building the Lena, Mississippi, home. On Townsend's instructions, Kincaid said she also opened checking and savings accounts at Deposit Guaranty National Bank in the names of Kincaid and Willie Duplasser. Thereafter, according to Kincaid, Townsend asked her to make currency deposits to these accounts during 1993 and 1994. Kincaid said she would pick up currency from Townsend, usually in ten and twenty dollar denominations, and make these deposits. Kincaid also stated that she had signature authority and wrote checks to pay for building materials and other costs incurred during the construction of the Townsends' home. According to Kincaid, she believed the money used by Braxton Townsend to build his house was money he had won in a lottery.

Agent Davidson says she found that full payment for the Townsends' home involved numerous transactions with Deposit

Guaranty National Bank and Magnolia Federal Bank, as well as payments of cash to various individuals. According to Davidson, Braxton Townsend had these accounts opened using the names of Diane Kincaid and Willie Duplasser. Braxton Townsend, says Davidson, instructed Diane Kincaid to deposit currency into these accounts and to structure the deposits, that is, to make deposits only in amounts less than $10,000.00. However, according to Davidson, Kincaid once made multiple deposits of less than $10,000.00 on the same day at different branch locations of Deposit Guaranty National Bank. Davidson relies on a Currency Transaction Report (CTR) prepared and filed by Deposit Guaranty. The CTR names Diane Kincaid as the individual from whom four currency deposits totaling $15,000.00 were received. Diane Kincaid told Davidson that she made these deposits for Braxton Townsend. Total deposits, says Davidson, which were traced to these accounts during 1993 and 1994, exceeded $250,000.00.

Finally, Agent Davidson says she checked the land records reposed in the Leake County Chancery Clerk's Office and found a Quitclaim Deed on file which transferred the property in question to Willie Pearl Duplasser on April 18, 1983. Duplasser is the only holder of title to the property. The deed does not reflect the purchase price of the land. The original Deed of Trust was satisfied on June 12, 1990, and no subsequent Deeds of Trust have been filed during or after construction of the Townsends' primary residence.

Therefore, based on Agent Davidson's affidavit, this court finds that the Government has met the initial burden of showing probable cause for its belief that there exists a substantial connection between the Townsends' property and the crimes of money laundering (Title 18 U.S.C. §§ 1956, 1957) of which Braxton Townsend was charged and convicted.

### b. *The Matter of Standing to Contest Forfeiture*

 A citizen has a right to a hearing to contest the forfeiture of his property, a right secured by the Due Process Clause. *See Degen v. United States*, 517 U.S. 820, 116 S.Ct. 1777, 1778, 135 L.Ed.2d 102 (1996), citing *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48–62, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972); and *McVeigh v. United States*, 11 Wall. 259, 266–267, 20 L.Ed. 80 (1870). However, before a hearing on the matter of forfeiture governed by Rule C will be granted, a citizen seeking to contest forfeiture must establish standing to do so, first by complying with the Rule's provisions, and secondly by showing a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement (Article III standing). *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374–75, *reh'g denied*, 802 F.2d 837 (5th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). This court now looks to the claims of the Townsends and Willie Pearl Duplasser to determine whether any of the claimants have established standing to contest forfeiture in the instant case.

### 1. *The Townsends' Article III Standing*

A claimant must show an interest in the property sufficient to create a case or controversy (Article III standing). *United States v. Contents of Accounts*, 971 F.2d at 984; *United States v. One 1978 Piper Navajo PA–31, Aircraft*, 748 F.2d 316, 319 (5th Cir.1984) (a party must demonstrate an interest sufficient to satisfy the court of standing to contest the forfeiture); *United States v. $364,960*, 661 F.2d 319, 326 (5th Cir.1981) (same); and *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374–75, *reh'g denied*, 802 F.2d 837 (5th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987) (claimant must be able to show at least a facially colorable interest in the

proceedings sufficient to satisfy the case-or-controversy requirement, citing *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343).

■ In the instant case, the Government argues that the Townsends have presented no proof of any interest, equitable or otherwise, in the subject property. Clearly, inasmuch as Willie Pearl Duplasser is the record title holder, the Townsends have no claim of legal title to the property. However, the Government's own proof shows that the Townsends paid the construction bills and exercised dominion over the property. Moreover, the evidence before the court may support the contention that the Townsends are unsecured or general creditors of Willie Pearl Duplasser, although unsecured or general creditors do not have standing to challenge forfeiture of the debtor's property. *United States v. $47,875.00 in U.S. Currency,* 746 F.2d 291, 294 (5th Cir.1984). Still, the Townsends have filed a verified claim purporting to possess an equitable interest in the targeted property. This filing in conjunction with the Government's submitted proof, in this court's eye, is sufficient to raise a legitimate issue of standing at this juncture.[8] Thus, this court concludes that the Townsends at this point have sufficient Article III standing to contest this forfeiture proceeding.

### 2. Willie Pearl Duplasser's Article III Standing

■ The facts before this court tend to show that Willie Pearl Duplasser is nothing more than a nominal or "straw" owner with no real interest in the property. Under these circumstances, even legal ownership of the property will not establish standing to contest forfeiture. *See United States v. Contents of Accounts,* 971 F.2d. at 985 (legal title to the res may be insuffi-

cient to establish standing to contest forfeiture where party is only a nominal or straw owner). Still, the Government acknowledges that Willie Pearl Duplasser possesses legal title to the properties at issue. Thus, since whether she has the requisite standing to contest this forfeiture is a disputed question, this court cannot grant summary judgment to the Government on this point.

### c. Compliance With Rule C(6)

■ The Fifth Circuit requires strict compliance with all the provisions of Rule C. *See United States v. Real Property Located at 14301 Gateway Boulevard West El Paso County, Texas,* 123 F.3d 312, 313 (5th Cir.1997); *$38,570 United States Currency,* 950 F.2d at 1115, citing *U.S. v. One Assortment of Eighty–Nine Firearms,* 846 F.2d 24, 26 (6th Cir.1988); *$38,000 in U.S. Currency,* 816 F.2d at 1547. "In order to have standing to challenge a forfeiture proceeding, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6)." *United States v. $288,914 in United States Currency,* 722 F.Supp. 267, 270 (E.D.La.1989). This form of standing is "statutory standing" which requires a claimant to comply with the procedures set forth by Supplemental Rule C(6). *See United States v. Premises Known as 2930 Greenleaf Street,* 920 F.Supp. 639, 642 (E.D.Pa.1996), citing *United States v. Contents of Accounts Nos. 3034504504 & 144–07143 at Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 971 F.2d 974, 984 (3d Cir.1992), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993).

### 1. The Townsends' Statutory Standing

recognizable legal or equitable interest in the property seized," citing S.Rep. No. 225, 98th Cong., 2d Sess. 215 (1984), reprinted in 1978 U.S.Code Congressional & Administrative News, 9496, 9522.

---

**8.** In *United States v. $38,570.00 U.S. Currency,* 950 F.2d 1108 n. 4 (5th Cir.1992), a case arising under Title 21 U.S.C. § 881(a)(6), the Fifth Circuit noted that, for the purposes of standing, "[t]he term owner should be broadly interpreted to include any person with a

On March 3, 1997,[9] within the ten-day period after actual notice of the warrant was served on the Townsends on February 21, 1997, the Townsends filed a motion to dismiss and for additional time to plead, including a request to suspend the requirement for an answer until after resolution of the criminal case. This motion was followed by a verified claim of equitable interest on March 13, 1997.

This court finds the Townsends' verified claim to be timely, inasmuch as Rule C(6) provides that a claimant must "file a claim within 10 days after process has been executed, *or within such additional time as may be allowed by the court,* and shall serve an answer within 20 days after the filing of the claim." Consistent with this court's verbal order during Braxton Townsend's criminal jury trial, this court hereby accepts the Townsends' March 13, 1997, verified claim. However, there is still the matter of the Townsends' failure to file an answer.

Since a district court has discretion to extend the time in which a claimant must file a verified claim, *see United States v. 51 Pieces of Real Property, Roswell, New Mexico,* 17 F.3d 1306, 1318 (10th Cir.1994), citing *United States v.1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1436 (9th Cir.1985), and since the answer must be filed within twenty (20) days of the filing of the verified claim, it follows that the district court's discretion relative to extensions relative to the filing of verified claims affects the due date for the filing of the answer. During the criminal trial of Braxton Townsend, this court verbally allowed the Townsends to extend the time in which they were required to file their answer, intending later to enter a written order. When this court recognized its oversight and the fact the Townsends had filed a verified claim, but no answer, this court then directed the Townsends to file the answer within ten (10) days of that January 28, 1998, order just in case the Townsends were yet awaiting some pronouncement from this court when their answer was due. The Townsends were also ordered to respond to the Government's motions for summary judgment which the Government had filed back on June 4, 1997, and October 9, 1997. As stated earlier, the Townsends have submitted nothing in response to this court's order of January 28, 1998, even though over thirty (30) days have elapsed in the meantime. Therefore, this court finds that the Townsends have failed to file the required answer and, thus, have not strictly complied with Rule C(6).

### 2. *Willie Pearl Duplasser's Statutory Standing*

The Government served Willie Pearl Duplasser, title owner of the property in question, a copy of the notice of forfeiture and the verified complaint on February 19, 1997. Duplasser responded with an unverified claim on March 3, 1997, followed by an answer to the verified complaint on March 24, 1997.

The courts have taken a severe stance against a claimant who has not properly and timely perfected a verified claim in a forfeiture proceeding. *United States v. Real Property Located at 14301 Gateway,* 123 F.3d at 313 (upholding district court dismissal for failure to timely file verified claim); *United States v. $38,570 U.S. Currency,* 950 F.2d at 1115 (answer stricken when not preceded by verified claim); *United States v. One 1978 Piper Navajo PA–31, Aircraft,* 748 F.2d, at 319 (dismissal for failure to file a verified claim or to move to amend and provide verification); *United States v. Fourteen Handguns,* 524 F.Supp. 395 (S.D.Tex.1981). In the instant case, even though Willie Pearl Duplasser has filed an answer, the answer was not preceded by a verified claim and may be stricken on that basis alone. Thus, Willie Pearl Duplasser lacks statutory standing to contest forfeiture in this case.

---

**9.** The 10–day deadline for filing a verified claim fell on March 7, 1997.

## IV. *CONCLUSION*

This court finds that the Government's proof of probable cause for forfeiture is reasonable and supported by more than mere suspicion. *United States v. One 1986 Nissan Maxima GL,* 895 F.2d 1063, 1064 (5th Cir.1990), quoting *United States v. One 1978 Chevrolet Impala, Etc.,* 614 F.2d 983, 984 (5th Cir.1980). The claimants have not shown that the factual predicates for forfeiture are absent or that they have a colorable defense to this forfeiture action. *1988 Oldsmobile Cutlass Supreme 2 Door et al.,* 983 F.2d, at 674, citing *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 325 (5th Cir.1981). Therefore, because Willie Pearl Duplasser and the Townsends have not filed proper claims and answers and because the Government's assertions of probable cause are unrefuted, this court finds that the Government's motions to strike the pleadings of the Braxton and Lora Townsend, and Willie Pearl Duplasser, are well taken and entitle the Government to summary judgment granting forfeiture of the above-described property to the United States of America, vesting all right, title and interest in the targeted property in the United States for disposition in accordance with law.

SO ORDERED AND ADJUDGED.